339 So.2d 1255 (1976)
Larry D. WARD
v.
SEARS, ROEBUCK & COMPANY et al.
No. 10928.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
*1257 Sidney W. Provensal, Jr., New Orleans, and Standwood Duval, Jr., Houma, for plaintiff and appellant.
Harry McCall, Jr., New Orleans, and Charles Houk, House Counsel, Sears, Roebuck & Company, Atlanta, Ga., for defendants and appellees.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
This appeal by Plaintiff, Larry D. Ward (Appellant), is from judgment dismissing his suit for alleged libel and slander. Named defendants are Appellant's former employer Sears, Roebuck and Company; David Stewart, Manager, Sears store in Houma, Louisiana; Robert Dusse, Comptroller, Sears in Houma; Camille Lewis, Credit Department Employee, Sears in Houma; Hercel Fletcher, Group Credit Sales Manager for Sears New Orleans area; and Adam Orgera, Group Manager for Sears in New Orleans. We affirm.
Appellant, Credit Manager for Sears' Houma store, was accused by a subordinate, Camille Lewis, of violation of certain company policies including allowing Mrs. Lewis to "work off the clock", meaning working overtime without pay. As a result of the accusations, Appellant offered to resign and did in fact sign a blank resignation form. Appellant subsequently retracted his resignation and was discharged by his immediate superior David Stewart. The issues presented and argued below were: (1) Did Appellant resign voluntarily or under duress; (2) Were Mrs. Lewis' accusations false, libelous and slanderous; (3) Did Appellees enjoy a qualified privilege and, if so, was the privilege abused in that the statements involved were made with malice and in bad faith; and, (4) Quantum in the event of liability.
On March 18, 1974, Appellant was employed as Credit Manager of Sears' Houma establishment. He had been employed by Sears for nine years and served as Credit Department Manager since October 1, 1971. Appellant's office staff consisted of defendant Lewis, Gladys Prejean, Delores Morrison, and JoAnn Kirkpatrick. It is conceded that Appellant enjoyed the reputation of an outstanding credit man. For the past two years Appellant and his department were named the outstanding credit department in Sears southern region comprising 120 stores. Coincidentally, Appellant was being considered for a third such citation when this matter arose.
Mrs. Camille Lewis was employed in the credit department of Sears' Houma store since February, 1969, except for a six week leave granted her for a stay in a mental institution sometime in early 1970. On March 12, 1974, Mrs. Lewis requested the Personnel Office to transfer her to another department. It appears she was unhappy in her then position. She also wished an early transfer because of an anticipated reduction in credit department personnel. During this visit and in Mrs. Lewis' discussion with Personnel, Mrs. Lewis mentioned that she had worked "off the clock", which is against Sears' policy and is a violation of federal law which subjects an employer to criminal proceedings pursuant to the Fair Labor Standards Act and also renders an employer liable to fine. Mrs. Lewis also *1258 disclosed that mileage due her for work outside the office was improperly paid her with Appellant's consent, knowledge, and approval. In this regard the record establishes that the mileage due Mrs. Lewis for such outside work was recorded by Mrs. Lewis on Appellant's mileage sheet which Appellant signed. Appellant in turn reimbursed Mrs. Lewis. Additionally it was revealed that receipts for reimbursement of the mileage traveled by Mrs. Lewis were not properly handled. The receipts were taken from the cashier instead of entering them in a receipt book and the correct number of copies made.
Mrs. Lewis' alleged working off the clock was reported by the Personnel Department to Dusse, who in turn reported it to his superior and to Stewart. On March 15, 1974, Stewart contacted Fletcher. In turn, Fletcher relayed the information to Orgera, who instructed Fletcher to proceed to Houma and investigate the charges.
On Saturday, March 16, 1974, Mrs. Lewis gave a written statement to Dusse and Stewart in which she alleged she had worked off the clock approximately 66 hours. It was agreed she would be reimbursed for this amount of overtime. It was further agreed Mrs. Lewis would remain off work for three or four days, with pay, and her request for transfer to another department was granted.
Fletcher arrived at the Houma store on Monday, March 18, 1974. He privately exhibited the mileage sheets and improper receipts to Appellant. Appellant was advised that Mrs. Lewis reported the mileage sheets were for calls Mrs. Lewis made before reporting for work in the mornings and for which she had not been fully paid. Fletcher requested an explanation from Appellant. The testimony is conflicting as to what transpired at this juncture.
Fletcher testified that Appellant immediately declared Appellant had "done wrong" and wanted to resign. Fletcher told Appellant that he could not accept such an impetuous reaction and that Appellant owed Fletcher an explanation. According to Fletcher, Appellant then stated that he was tired, overworked, lacked sufficient help and had asked Mrs. Lewis to make the calls. Appellant also said he did not want to cause anyone any problems and would not fight the matter; that he just wanted to resign and get it over with. At this point in the discussion, Fletcher received a telephone call from a Mr. Hogan, Regional Credit Manager in the Sears Memphis, Tennessee office. Fletcher left to take the call in another office and on returning told Appellant that Hogan was calling to announce that Appellant's department had again been selected for citation for outstanding service. He informed Appellant that under the circumstances he had no choice but to inform Hogan of the developments at the Houma store and, after explaining to Hogan what Fletcher felt was involved, Hogan had stated "it looks very bad". Appellant again requested to be allowed to resign but before doing so he wished to speak to his staff and he was allowed to do so.
Appellant testified that when shown the mileage sheets and receipts by Stewart, he noted the sheets were not identical to those he had signed. He observed some additions and alterations thereon although he admitted having signed the mileage sheets made out by Mrs. Lewis for calls which she made outside the office at Appellant's request. He denied, however, that Mrs. Lewis "worked off the clock" with his knowledge and contended that Mrs. Lewis had been paid for all outside calls which she had made at Appellant's request. Appellant stated that when Fletcher returned from answering Hogan's call, Fletcher informed Appellant that Hogan said there was "no hope" for Appellant.
It is conceded that following the discussion between Appellant and Fletcher, Appellant, with Fletcher's consent, proceeded to the Credit Department and advised his staff of the charges made against him by Mrs. Lewis. In effect he stated he did not want to involve the staff; that he wanted to thank them for past cooperation and urge their continued loyalty to Sears; and that under the circumstances he would have to resign or be fired. This development *1259 created consternation in the department. Fletcher suggested that Appellant leave the office for a few minutes while Fletcher attempted to calm the employees. Mrs. Morrison and Mrs. Prejean were requested by Fletcher to report to Stewart's office to explain what they knew about the situation. Appellant left for a cup of coffee and in a few minutes returned. Upon passing the partly open door to Stewart's office, Appellant overheard a heated conversation between Mrs. Morrison, Mrs. Prejean, and Stewart. Appellant entered the office and noted the ladies on the verge of tears. He also observed Stewart to be considerably agitated. He testified that not wishing anything to happen to the ladies he requested that they leave Stewart's office. He concedes that he offered to resign and noted a blank resignation form on Stewart's desk. He also stated he asked for the form, signed it in blank and then went to his office where he removed his personal belongings from his desk and departed.
Stewart's testimony coincides in large part with that of Appellant regarding the incidents in Stewart's office in the present of Mrs. Morrison and Mrs. Prejean. Stewart denied, however, that when Appellant entered his office a blank resignation form was lying on Stewart's desk. He stated that after Appellant again stated a desire to resign, Stewart took a resignation form out of his desk drawer and handed it to Appellant in the presence of the ladies and asked Appellant if Appellant were sure he wanted to resign. Stewart said Ward entered "personal" on the form as the reason for his resignation.
On Tuesday morning, March 19, 1974, on orders of Stewart a meeting was held with each member of the credit department in an attempt to stop rumors to the effect that Appellant had resigned because of immorality and misuse of company funds. That same afternoon a similar meeting was held with the store's division managers.
The following morning, Appellant came to the store and demanded of Fletcher and Stewart that Appellant be allowed to see his resignation form and was handed the form for his inspection. What ensued is also in dispute. Stewart and Fletcher testified that when Appellant was handed his resignation he tore it up and stuffed the pieces in his pocket. Appellant then became violent and exceedingly profane. Appellant beat his fist and hand on the desk, cursed, demanded to be fired and wanted to know who would fire him. Stewart also testified that in view of Ward's conduct Stewart was left with no choice but to let Ward go.
Appellant testified, however, that after resigning on Monday he reconsidered and wanted to retract his resignation because he felt he had done no wrong. He returned to the store on Wednesday and upon being shown his resignation he tore it up when he noted thereon a notation that he was not eligible for rehire despite the further notation that his service and conduct were excellent. He acknowledged telling Stewart he did not want to resign but would rather be discharged. He also conceded some harsh words that he would not normally have used were said and that he was not a "pussycat" on this occasion. He denied, however, that he cursed or became violent or abusive.
Stewart and Fletcher concede Appellant's work record was excellent. Stewart also acknowledged a memorandum by him referring to Appellant's resignation, Appellant's subsequent change of mind and Stewart's subsequent release of Appellant because of Appellant's violation of company policy. Additionally, Stewart noted that Appellant was not eligible for rehire because of conduct unbecoming an executive officer.
Mrs. Morrison and Mrs. Kirkpatrick, testifying for Appellant, stated in effect they had never seen Mrs. Lewis working in the office after hours. They noted her presence after hours but stated she was there for personal reasons, waiting for a friend who worked in another department. They also stated that on many such occasions Mrs. Lewis declined to help other employees on explaining "I'm here, but I'm not here".
Mrs. Lewis testified that although Appellant did not request that she work after *1260 hours or make weekend calls on credit customers, she did so with Appellant's knowledge but without any intent on her part to collect overtime pay. She stated that her overtime work surfaced when Personnel asked her about overtime and she was later asked the same question by Dusse and Stewart. Mrs. Gladys Prejean attested that Mrs. Lewis worked in the office after hours.
While Appellant concedes Mrs. Lewis made overtime calls at his request, he contends she was paid by adjustments to her time cards which indicated her arrival at 8:30 A.M., which is earlier than her normal arrival time when she worked calls. It is in than her normal dispute whether Mrs. Lewis should have been paid from the time she left her home on calls or the time she was to report for work. Appellant contends she was due no pay for travel time from her home to work. Appellees maintain she was entitled to overtime for such travel when she worked calls. Appellant, nevertheless, concedes he signed mileage sheets and reimbursed Mrs. Lewis for vouchers turned in to the cashier for cash payment. Appellant also stated that so far as he knew, whenever Mrs. Lewis remained in the office after hours she stayed for purely personal reasons.
We find no support in the record for Appellant's contention that his discharge resulted from a conspiracy between defendants to discredit him and thus effect his release. The record shows that prior to the incident in question, Stewart and Dusse, Stewart particularly, were close friends. They socialized and visited in each other's homes. Appellant failed utterly to show bias, prejudice or ill will toward him by either of these defendants. Stewart's testimony makes it clear that he attempted to persuade Appellant to seriously consider Appellant's position before signing the resignation.
While there appears to have been some ill feeling toward Appellant by Mrs. Lewis the record fails to establish any malice on her part. The record is devoid of threats by her or any intimation that she deliberately sought to ruin Appellant's career.
We find nothing to support Appellant's position that he resigned to protect his staff because of his fear of their overreaction to the charges against him. It appears every reasonable effort was made to calm the employees of Appellant's department and assure them that Appellant resigned for personal reasons and that Appellant had not been discharged for dishonesty.
An action for libel and slander falls within the ambit of LSA-C.C. Article 2315, our general tort law. Our jurisprudence establishes that in an action of this nature proof of the following elements are necessary for recovery: (1) Defamatory words; (2) Publication, meaning communication to one other than the party defamed; (3) Falsity; (4) Malice, actual or implied; and (5) Resulting injury. Rougeau v. Firestone Tire & Rubber Company, 274 So.2d 454 (La.App. 3rd Cir. 1973); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3rd Cir. 1968); Comment 28 La.L.Rev. 82 (1967).
Under the circumstances of this case we entertain serious doubt concerning whether Mrs. Lewis' statements regarding her working overtime constituted communication of defamatory remarks. Her testimony is clearly to the effect that she did not expect payment for the overtime worked and for that reason never requested payment. She stated explicitly that she divulged the overtime work when questioned by Personnel incident to her request for a transfer. The record is also clear that Sears Personnel Department became concerned over the possibility that the action reported by Mrs. Lewis might conceivably subject the company to criminal penalties and for that reason decided to request an explanation of Appellant. The record also shows that the investigation by Fletcher and Stewart convinced these executives overtime pay was due Mrs. Lewis. An agreed amount was reached and Mrs. Lewis was paid.
For the foregoing reasons and also because Appellant frankly admitted having signed mileage sheets filled out by Mrs. Lewis and having approved Mrs. Lewis' use *1261 of improper receipts, we find Appellant has failed to bear the burden of proof of falsity. Our jurisprudence holds that in cases of this nature the preponderance of proof required for making out a plaintiff's case is greater than in ordinary civil cases. D'Echaux v. D'Echaux, 133 La. 123, 62 So. 597 (1913); Sterkx v. Sterkx, 138 La. 440, 70 So. 428 (1915); Lamartiniere v. Daigrepont, 168 So.2d 370 (La.App. 3rd Cir. 1964).
In this instance Appellant was offered opportunity to establish the falsity of the statements by Mrs. Lewis. Instead of participating in the investigation, Appellant declined to offer any explanation or defense. Instead he made incriminating admissions and voluntarily resigned. Later he attempted to retract his resignation under circumstances which left his superiors little alternative except to discharge him.
Nor do we find proof of the malice alleged by Appellant in this instance. As concerns Mrs. Lewis, Appellant contends she was biased because he declined to recommend her for promotion. Stewart's prejudice is said to result from Appellant's refusal of Stewart's request that Appellant serve part time on the sales floor and Fletcher's approval of Appellant's refusal. Dusse's partiality is said to have been caused by Appellant's complaint to Dusse's superior that Dusse was not getting credit department mail out on time. While all these incidents are admitted, it suffices to say the record is devoid of proof of conspiracy on the part of the above named parties.
Moreover, we find that communication by Mrs. Lewis, Stewart, Dusse, Fletcher and Orgera, among themselves, enjoyed a conditional or qualified privilege, the essential elements of which are good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion and publication in the proper manner and to proper parties only. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958).
In this context good faith means a statement made with reasonable grounds for believing it to be true. Only when lack of such reasonable grounds is found can it be said the person uttering the statement is actuated by malice or ill will. On grounds of public policy, our law recognizes certain communications as privileged and, as such, they may not serve as grounds for imposing liability for defamation.
Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962), establishes the rule that a publication enjoys a qualified or conditional privilege if made (a) in good faith; (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty; and, and (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicator will be held liable in damages if the good faith communication later proves to be untrue or inaccurate.
We find it reasonable for Mrs. Lewis to believe Appellant knew she worked off the clock. We also find this information was divulged by her to the Personnel Department during an interview in which Mrs. Lewis requested a transfer. The occasion was one in which she had an interest as well as a duty to communicate. The communication among Stewart, Fletcher, Dusse and Orgera was in good faith, pursuant to their mutual business interest, within the scope of that interest, made in a proper manner, on a fitting occasion and to proper parties. We find all these communications within the qualified and conditional privilege invoked by these defendants. See 60 A.L. R.3rd 1110. The record fails to disclose, except as hereinafter shown, that the accusations made to Appellant were made in the presence of any third person. Revelation of the charges to the personnel in the credit department was not publication by defendants. Appellant voluntarily and at his own request divulged the charges to his staff all of whom testified that prior to such revelation none had any knowledge of the accusations.
*1262 Dusse and Stewart acknowledged they discussed the matter with their respective wives. No attempt was made to elicit the scope of such discussion. We find such communication does not constitute slander because we find Appellant has failed to establish either the falsity of the statements or that such communication was accompanied by malice or ill will.
It is elementary that findings of facts by trial courts will not be disturbed on appeal unless found to be manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973). In this instance we were not favored with written reasons by the trial court. However, it is obvious that rejection of Appellant's demands involved determination of witness credibility which the trial court presumably made in favor of Appellees. It appears reasonably certain the trial court accepted the testimony of Appellees and rejected that of Appellant and his witnesses concerning the circumstances under which the accusations were made. We find no error in these determinations.
The judgment is affirmed at Appellant's costs.
Affirmed.