LEAR, Judge.
Plaintiff-appellant, Charles B. W. Palmer, perfects this appeal assigning error to the trial court’s ruling dismissing his tort action against Fireman’s Fund Insurance Company after trial by judge alone. After a review of the evidence, we are of a like opinion and, therefore, affirm.
Appellant, Charles B. W. Palmer, is a practicing attorney who resides in Amite, Louisiana. At all times material, he was the attorney for Felix Lucito, who was a plaintiff in the proceedings below, but who has not perfected an appeal herein. Lucito was represented by Palmer in a workmen’s compensation action against his employer, Ponchatoula Feed & Seed of Ponchatoula, Louisiana. Lucito had received several workmen’s compensation checks, payable on the account of defendant-appellee, Fireman’s Fund, the workmen’s compensation insurer. Palmer, on December 6, 1976, deposited some five drafts totaling $5,193.90 with the Citizens National Bank in Amite, *397 Louisiana. The largest draft amount ($4,486.70) had been issued on June 23,1976. Since he was an attorney who did business with the bank, his account was immediately credited with the full sum, after his endorsement and that of Mr. Lucito were obtained by a Mrs. Mabel Walker, a bank employee. The drafts were made payable through the Wells Fargo Bank of San Francisco, California. They bear the endorsement on the back of “Felix Lucite” (sic) and “Charles, Palmer, Atty.”
When the drafts reached San Francisco, the bank refused to honor them, stamping on the face of each instead, “PERSONAL ENDORSEMENT OF EACH PAYEE REQUIRED.” This transpired on or about December 20, 1976. The defendant company, Fireman’s, admitted that it refused to honor the drafts because its employee believed the endorsements were made by the same person.
When the drafts were returned unpaid, Citizens National Bank, through Elmer Crouse, communicated the following notice to Mr. Palmer on December 23, 1976:
“Dear Mr. Palmer:
“Fireman’s Fund returned five drafts which you deposited with us in the amount of $5,193.90. The bank is holding these return drafts as cash items. Please make immediate arrangements to have these drafts honored. These drafts were returned to Citizens National Bank marked (Personal endorsement of each payee required).
“Thank you for your prompt attention in this matter.”
Palmer testified that upon receipt of the above communication, he felt defamed; that the statement, “Personal endorsement of each payee required”, constituted, in his opinion, an allegation of forgery and was most libelous. The theme of Palmer’s case was bottomed on defamation of character, and his assertion that the transaction described above exposed him to embarrassment, ridicule and even criminal indictment.
We have reviewed the record and we are unable to find any merit in appellant’s contentions. Appellant’s own witness, Elmer Crouse, testified that it is a common practice for banks to advance credit on a draft to those attorneys regularly doing business with it. He stated, however, that a draft is merely a collection item and that the endorsers must return the cash if the draft is not paid. On cross examination, the witness further pointed out that a confirmation of the signatures to the satisfaction of the paying agency (here Fireman’s Fund and Wells Fargo) is usually sufficient and that no cash repayment would be required under those circumstances. In fact, this is exactly what was later done and the endorsers were not required to return any money to Citizens National Bank. Nor, indeed, were any criminal charges whatsoever instituted against appellant.
The elements necessary to recover for defamation, set out in Trahan v. Ritterman, 368 So.2d 181, (La.App. 1st Cir. 1979) are: (1) defamatory words, (2) communicated to some person other than the one defamed, (3) falsity, (4) malice, actual or implied, and (5) resulting injury. If criminal conduct is imputed, the false words are defamatory per se.
However, contrary to appellant’s contention, we are unconvinced that the words stamped on the face of the drafts accused him of criminal conduct.
Further, in making a determination of whether the words are defamatory, the court must look not only to the words themselves but also to the context and circumstances in which they were used. For example, in Becnel v. Boudreaux, 340 So.2d 687 (La.App. 4th Cir. 1976), writ denied 342 So.2d 671 (La.1977), the defendant, a school board member, at a public meeting of the board, stated: “I refuse to be blackmailed! Mr. Becnel is blackmailing us!” This was also reported in the local newspaper. Mr. Becnel, an attorney, brought suit and won an award in the trial court which was reversed on appeal.
In our opinion, Mr. Palmer’s case is much weaker than that of Mr. Becnel.
*398 The record reveals that appellant, Palmer, was engaged in some form of public controversy involving the office of the district attorney for the Twenty-First Judicial District. Nevertheless, that dispute was totally irrelevant to the issues of this lawsuit and appeal. There is no evidentiary basis of record which supports appellant’s claims. Therefore, the decision of the lower court is affirmed at appellant’s cost.
AFFIRMED.