407 So.2d 79 (1981)
Maxwell DESSELLE, Plaintiff-Appellant,
v.
Jane GUILLORY, et vir., Defendants-Appellees.
No. 8462.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1981.
Rehearings Denied January 5, 1982.
Writs Denied February 19, 1982.
*80 Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, for plaintiff-appellant.
John T. Bennett, Marksville, for defendants-appellees.
Before DOMENGEAUX, SWIFT and YELVERTON[*], JJ.
SWIFT, Judge.
In these consolidated suits[1] the plaintiffs, Kenneth Maillet, Maxwell Desselle and Garland Desselle, appeal from a verdict of the jury denying their claims of defamation against the defendants, Jane and Gerard Guillory. They also assign as error the jury's granting of the defendants' reconventional demand for attorneys' fees.
In July of 1979 Mrs. Jane Guillory was a counselor at a summer church camp for girls. She participated in a conversation with several of the girls who told her about incidents which they had heard or witnessed concerning certain teachers, including the plaintiffs, at Bordelonville High School. When Mrs. Guillory discussed with one of her church deacons the information, which included allegations that the teachers were fondling students, he advised her to inform the school principal.
The following month Mrs. Guillory took up the matter with Mr. Jimmy Bordelon, the principal of the high school, who assured her that he would observe the teachers' behavior.
On March 6, 1980, Mrs. Guillory visited with Mr. Bordelon to discuss a poor grade on a test given to her daughter by Maxwell Desselle. Mr. Desselle was called in to talk to Mrs. Guillory about it. They had a heated discussion concerning the test and the defendant also made a comment to the effect that she had something else on Desselle. After he returned to his classroom Mrs. Guillory told the principal that the teachers had continued to molest the children. She testified that prior to this visit Abigail Farbes had informed her that it was still going on. The principal told Mrs. Guillory he did not believe such rumors and had not observed any such behavior. Mrs. Guillory then informed the principal she would take her information to the superintendent.
That same afternoon Mrs. Guillory had a conversation with Mrs. Jeannette Huffmaster. When Mrs. Guillory informed her of what she had heard, Mrs. Huffmaster told her that she had seen Maxwell Desselle pat a girl on the buttocks in the presence of Mr. Bordelon.
On March 7, 1980, Mr. Bordelon met with the plaintiffs and informed them of what Mrs. Guillory had said. The four then went to the Guillory home to discuss the matter. At this meeting an argument ensued and at *81 least one of the plaintiffs threatened to sue the Guillorys for defamation.
Later that night Mrs. Guillory called her attorney who advised her to obtain written statements from the girls that had given her the information about the teachers. Mrs. Guillory went to the homes of Abigail Farbes, Joan Hess, Tammy Lemoine, Beverly Martin and Terry Bringold to obtain such statements. She said she explained the situation and alleged incidents to their parents and got their permission before asking the girls to write "letters" as to what they saw or heard about the matter. Three of these persons and her daughter did so.
On March 10, 1980, Mrs. Guillory and Mrs. Huffmaster drew up a petition calling for an investigation by the Evangeline Parish School Board into wrongdoings at Bordelonville High School. The petition did not contain the names of the plaintiffs or of any specific facts concerning the alleged wrongdoings. These ladies then visited five or six homes in an attempt to obtain signatures on the petition. The school board directed a representative to make an investigation. Upon his failure to obtain any testimony of wrongdoing, the board concluded there was no basis for action against any teacher and closed the case. The recorded statements taken by the representative were destroyed and the interested parties were notified in writing of the board's decision.
The only conversation that Mr. Guillory, the husband of Janie Guillory, had with any person other than his wife or the plaintiffs concerning the matter occurred in the summer of 1979. Mr. Guillory told Mr. Armand, a high school band instructor, generally what his wife had heard and assured Armand that he was not involved.
The testimony in the record as to the statements made by the girls to Mrs. Guillory at summer camp follows.
In regard to specific instances, Mrs. Guillory testified that Abigail Farbes and Beverly Martin had told her they were fondled by these teachers. She also said that Margie Ballard told her that she slapped Garland Desselle one day when he started feeling her bottom as she came out of the gym dressed for P.E.
Beverly Martin testified she had told Mrs. Guillory that she had heard students say that some of the teachers played with the students. In particular, she had heard Kenneth Maillet would take girls in the bathroom after practice, but they wouldn't tell her what they did. She also told her that Garland Desselle was friendly with the girls and would allow them to sit in his lap and that he felt one girl during P.E. In addition she told Mrs. Guillory of an incident when Maxwell Desselle kissed her under the mistletoe. Abigail Farbes testified she had told Mrs. Guillory that Maxwell and Kenneth Maillet would flirt around with girls and that Beverly had told her that Maxwell Desselle once had grabbed Beverly and gave her a passionate kiss.
Joan Hess testified that before the Mardi Gras trip she had her majorette uniform on under her jeans and part of the uniform was showing. She stated Mr. Maillet tugged at the jeans and a button came undone from the jeans. Joan further testified she told Kaye Guillory, the defendant's daughter, that Kenneth Maillet tugged at her jeans pulling a button off.
Tammy Lemoine testified that in the written statement given Mrs. Guillory she said she heard that Kenneth Maillet and another girl "had something going on" and that Garland Desselle said "he was going to get some meat" from two girls "one of these days."
The testimony as to the content of the statements Mrs. Guillory made to the principal and the parents of high school students is in dispute. Mr. Bordelon, the principal, said Mrs. Guillory told him the teachers were fondling and molesting girls, although she never used the word "intercourse." Clara Laborde and Peggy Hess stated Mrs. Guillory had told them that one of the plaintiffs, Kenneth Maillet, had unzipped Mrs. Hess' daughter's pants before a Mardi Gras band trip and that the plaintiffs were molesting the girls. She also said some teachers were starting this in the elementary *82 grades and taking them to bed by the time they reached the high school grades.
Mrs. Guillory testified that she did not accuse the plaintiffs of anything, but merely told Mrs. Hess and Mrs. Laborde what she had heard from the girls and said she felt the plaintiffs might be having sexual relations with the students. Having heard things about these men, such as one girl having seen Kenneth Maillet with his pants down in the bathroom one night after basketball practice, she was trying to determine if they were true. She also stated at trial that she thought the parents had a right to know and she never intended to do any harm to the men allegedly involved.
The plaintiffs emphatically denied ever molesting or having intercourse with any high school students. Kenneth Maillet did not recall any incident where he unbuttoned a girl's jeans or did anything improper. Maxwell Desselle said he had harmlessly kissed Beverly Martin at a Christmas dinner. Mr. Bordelon and Maxwell Desselle denied the occurrence of Mr. Desselle patting a girl on the buttocks.
Concerning the statement Mr. Guillory made to James Armand, Mr. Armand stated Mr. Guillory told him certain teachers were molesting girls on a school trip and named the three plaintiffs. Mr. Guillory disputed this by saying he told him some of the girls had stated to his wife that some of the teachers were "messing around." He testified he did not intend any harm.
The issues presented by this appeal are: 1) whether or not the jury erred in rendering a verdict in favor of the defendants, and 2) whether or not the jury erred in awarding the defendants attorney's fees under LSA-C.C. Article 2315.1.
In order to maintain an action in defamation, the plaintiff must establish the following elements: 1) defamatory words; 2) publication; 3) falsity; 4) malice, actual or implied; and 5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980).
The available defenses against an action in defamation are: 1) privilege and 2) truth. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1 Cir. 1979); McGowen v. Prentice, 341 So.2d 55 (La.App. 3 Cir. 1977).
The appellants argue that the evidence presented sufficiently proved the elements necessary for an action in defamation and the defendants failed to bear their burden of proving privilege or truth. Assuming the evidence was sufficient to prove the first three elements of defamation, we find that a qualified privilege existed between Mrs. Guillory and each person she discussed the rumors with.
A qualified privilege exists as to a communication, even if false, between parties sharing an interest or duty. McGowen v. Prentice, supra, page 57. However, to be a good defense such communication must be made in good faith and without malice. Simms v. Clark, 194 So. 123 (La.App. 1 Cir. 1940).
In the present case Mrs. Guillory had discussions with the school principal and with several parents of girls attending Bordelonville High School concerning the alleged actions of certain teachers. The interests shared by each of these persons were to protect the welfare of their children at school and to provide good teachers in the public schools.[2]
There was sufficient evidence for the jury to have found that Mrs. Guillory was in good faith and without malice in her communications to the principal and the parents. See Ward v. Sears, Roebuck & Co., 339 So.2d 1255 (La.App. 1 Cir. 1976). Several high school girls told her that certain teachers were playing with the female students. She had heard that one of the plaintiffs was taking girls into the bathroom after practice for an unmentioned purpose; that a teacher was allowing a girl to sit on his lap while he felt her body; that *83 a teacher had unbuttoned the jeans of a girl; and that a teacher had kissed a student and he also had patted a girl on the buttocks.[3] Hearing these things from the girls and a parent, it was not unreasonable for Mrs. Guillory to have believed that improprieties were occurring at the school. From these facts the jury could have concluded that Mrs. Guillory had reasonable grounds to believe her statements were true and were made in good faith and without malice. In such case they were privileged.
There was also sufficient evidence for the jury to conclude that the conversation between Mr. Guillory and Mr. Armand, the band instructor, was privileged. Both men had an interest in the welfare of the children, especially during band trips. Mr. Armand testified that he thought the conversation took place in confidence. Mr. Guillory stated he told Mr. Armand that his wife had heard that several of the teachers were "messing around" with the students. Since a girl at camp had evidently told Mrs. Guillory that a teacher had unbuttoned a girl's jeans before a band trip, Mr. Guillory was not unreasonable in his concern over the welfare of the children on band trips and in his belief as to the truth of his wife's statements.
Although it is not in the record, the petition drawn up by Mrs. Guillory and Mrs. Huffmaster did not constitute a defamatory publication as to the plaintiffs. The uncontradicted testimony as to its contents is that the document did not contain the names of the plaintiffs and did not set forth any specific wrongdoings by them.
From our review of the record we are unable to say that the verdict of the jury favoring the defendants on the plaintiffs' demands is clearly wrong.
The final issue before the court is whether or not the jury erred in awarding the plaintiffs-in-reconvention attorney's fees under former Article 2315.1, B. This article (in effect at the times of the alleged defamations, but since repealed) provided that attorney's fees could be awarded to a defendant if the plaintiff's defamation suit was frivolous.[4]
We do not believe the filing of these suits was frivolous. Our decision is based on the defense of qualified privilege and the record contains no indication of any lack of sincerity on the part of plaintiffs as to their legal position. Therefore the jury award of $3,000 to the Guillorys for attorney's fees was in error and must be set aside. Boyd v. Community Center Credit Corporation, 359 So.2d 1048 (La.App. 4 Cir. 1978).
For these reasons the judgment of the district court is reversed and set aside insofar as it awarded $3,000.00 at attorney's fees to the plaintiffs-in-reconvention. Otherwise, it is affirmed. The costs of this appeal are assessed one-half to plaintiffs and one-half to the defendants.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[*] Judge Henry L. Yelverton, Fourteenth Judicial District Court, Parish of Calcasieu, participated as Judge ad hoc in this decision.
[1] Our Docket No. 8463, Kenneth Maillet, and No. 8464, Garland Desselle, v. Jane Guillory, et ux., 407 So.2d 84, respectively, and this case.
[2] In McGowen v. Prentice, supra, pg. 57, this court recognized that a good faith communication between parties sharing an interest or duty in providing good teachers in the public schools enjoyed a privilege in a defamation suit.
[3] The appellant contends that certain hearsay testimony of statements of the students were improperly admitted into evidence over his objection. The trial judge correctly allowed such testimony in evidence on the issue of good faith for the purpose of establishing that the statements were made to Mrs. Guillory and not for the truth of the matters therein stated.
[4] "B. Should plaintiff in any action for defamation, libel, or slander not prevail, and judgment be rendered in favor of the defendant, reasonable attorney's fees may be awarded to the defendant as an item of taxable costs if the court determines that the action was frivolous. In any such case, any retraction or correction made by defendant must be considered in mitigation of any damages to be awarded." LSA-C.C. Art. 2315.1.