485 So.2d 171 (1986)
Marx Michael ELMER, et al., Plaintiffs-Appellants,
v.
Gerald R. COPLIN, et al., Defendants-Appellees,
The Home Insurance Company and St. Paul Fire and Marine Insurance Company and United States Fidelity and Guaranty Company, Third Party Defendants-Appellees.
No. 17600-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
Rehearing Denied March 27, 1986.
Writ Denied June 6, 1986.
*172 Nelson & Achee, Ltd. by Harry R. Nelson, Shreveport, for plaintiffs-appellants Marx M. Elmer, Rosetta Levy Elmer, and Albert N. Elmer.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for defendants-appellees Gerald R. Coplin and Passman, Jones, Andrews, Holley & Company.
Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendants-appellees M. Levy Co. of Shreveport and Seymour Robles.
Wilkinson, Carmody & Gilliam by Jerald N. Jones, Shreveport, for defendants-appellees *173 Ben F. Smith Dry Goods Co., Inc. and The Home Ins. Co.
Mayer, Smith & Roberts by Kim Hanson LaVigne, Shreveport, for third party defendant-appellee St. Paul Fire and Marine Ins. Co.
Before HALL, C.J., and JASPER E. JONES and SEXTON, JJ.
HALL, Chief Judge.
Plaintiffs, Marx Michael Elmer and his parents, Albert and Rosetta Elmer, brought suit against Gerald R. Coplin, an attorney, his law firm, and his clients seeking damages for alleged defamatory remarks contained in a letter written by Coplin to the National Conference of Bar Examiners in response to an inquiry by the Conference relating to the admission of Marx Elmer to the District of Columbia Bar. A copy of the letter, dated October 16, 1978, is attached to this opinion as Appendix A. Various third party demands were filed by the defendants against each other and their insurers. Upon trial, at the conclusion of the plaintiffs case, the district court granted defendants' motion to dismiss as to the demands of Marx Elmer. After the conclusion of the trial the district court also rejected the demands of Albert and Rosetta Elmer. The plaintiffs appealed. Some of the defendants answered the appeal to preserve their third party demands and their claim for attorney's fees for the bringing of a frivolous defamation suit.
Although we find that the remarks contained in the letter were defamatory and false, we hold that plaintiffs are not entitled to recover because of lack of malice on the part of the defendants, conditional privilege, a release from liability executed by Marx Elmer, and lack of proof of damages by Albert and Rosetta Elmer. Accordingly, we affirm the judgment of the district court.
In 1977, the Elmers were the principal stockholders of M. Levy Company of Shreveport, a family-owned retail clothing business which had operated in Shreveport since 1857. Albert Elmer was the president of the company and the active manager of the business. His son, Marx Elmer, a member of the California and Louisiana Bars, had worked in the business for about two years with general administrative and merchandising responsibilities.
Effective June 30,1977, the Elmer family and their co-owners sold all of their stock in M. Levy Company to Ben F. Smith Dry Goods Company. The Smith Company was wholly owned by Retail Management and Factors, Inc. (R.M.F.) whose major shareholder was Seymour Robles. Gerald Coplin, a Dallas attorney and a partner in the firm of Passman, Jones, Andrews, Holly and Company, was counsel for both the Smith Company and R.M.F. prior to the acquisition of M. Levy Company and also became the counsel for M. Levy once it was acquired by the Smith Company. Soon after the sale took place, the Smith Company, represented by Mr. Coplin, sought to rescind the sale based upon allegations of fraud and misrepresentation by the selling shareholders of the company's assets and liabilities, and filed suit in federal court in Dallas to accomplish that result. In the course of handling this litigation, Coplin did extensive investigation and work including interviewing employees and accountants connected with M. Levy, taking depositions, reviewing depositions taken by others, reviewing financial statements, and the like.
Marx Elmer was familiar with the financial statements of M. Levy Company and its accounting practices and participated in the negotiations for the sale of the stock in the company. He worked with the attorneys representing the selling shareholders in the transaction, and reviewed documents prepared in connection with the sale. Shortly before the sale was finally consummated, he moved to the District of Columbia and went to work for the United States Department of Energy. In March, 1978, he applied for admission to the District of Columbia Bar. In answer to a specific question on the application form as to whether he had ever been charged with fraud, Elmer advised of the pending suit *174 and attached a copy of the complaint in that suit. In connection with his application he signed an "authorization and release" authorizing any person or company to furnish to the National Conference of Bar Examiners any information pertaining to him and releasing, discharging, and exonerating the National Conference and any person so furnishing information from any and all liability of every nature and kind arising out of the furnishing of information to the National Conference. A copy of the authorization and release is attached to this opinion as Appendix B.
In September, 1978, the examiners as part of their investigation made a written request to M. Levy Company for verification and description of Marx Elmer's employment and invited comment as to his qualifications to be admitted to the District of Columbia Bar. Upon receipt of that request, officials of the M. Levy Company forwarded the letter to their counsel, Gerald Coplin, for attention. Coplin drafted a letter addressed to the National Conference seriously questioning Marx Elmer's qualifications to practice law based upon what Coplin believed to be Elmer's participation in fraudulently misrepresenting M. Levy's assets and liabilities in the sale of the company. Coplin mailed the proposed response to M. Levy Company in Shreveport and invited comments by his client on the content of the letter. Seymour Robles and other officials of the company reviewed the letter and suggested one relatively minor change.
Coplin had the letter retyped and mailed the revised letter to M. Levy Company in Shreveport for final approval and forwarding to the National Conference in Washington. Somehow, probably due to a secretarial error, the envelope was addressed to Albert Elmer as president of M. Levy Company. Mr. Elmer's employment with the company had previously been terminated after the dispute between the selling and purchasing shareholders developed.
Mrs. Merritt, a long time employee of M. Levy and formerly Albert Elmer's personal secretary, opened the letter and read enough of it to know that it concerned Marx Elmer and questioned his qualifications to practice law. Mrs. Merritt called Marx Elmer's mother Rosetta and told her about the letter and then took the letter to Albert Elmer who was at his attorney's office.
Sometime later a follow up letter was directed to M. Levy Company by the National Conference stating that it had not received a response to its inquiry. Coplin was contacted and he sent another copy of the letter directly to the National Conference in December, 1978. Coplin also sent a copy of the letter to a Shreveport attorney who was also representing M. Levy Company under its new ownership, inquiring if it would be appropriate to bring the matter of Marx Elmer's qualifications to the attention of the grievance committee of the Louisiana State Bar Association. The lawyer considered this matter to be beyond the scope of his employment as an attorney for M. Levy Company and after showing the letter to his partner, destroyed it.
Marx Elmer was admitted to the District of Columbia Bar in February, 1979, and later was admitted to the New Mexico Bar after he moved to Alberquerque, where he continued to practice law.
Marx Elmer and his parents subsequently filed this defamation action against Coplin and his law firm. Also named as defendants were M. Levy Company of Shreveport, Seymour Robles, Ben F. Smith Dry Goods Company, and Retail Management and Factors, Inc. R.M.F. brought third party demands against Home Insurance Company, Smith Company's public liability insurer, and Saint Paul Fire and Marine Insurance Company, Smith Company's excess public liability insurer. Additionally, R.M.F. filed a third party demand against United States Fidelity and Guaranty Company claiming coverage and a duty to defend under a policy issued to R.M.F. M. Levy Company, Smith Company, R.M.F., Robles, and their insurers filed demands seeking indemnification and/or contribution from Coplin and his law firm.
*175 While this defamation suit was pending, the litigation concerning the sale of the M. Levy stock was ultimately tried in the U.S. District Court for the Western District of Louisiana and was resolved in favor of the selling shareholders. The federal district judge in an opinion rendered in January, 1980, specifically found that the Elmers were not guilty of any fraud, deceit, or misrepresentation.
Before trial of the defamation action the district court ruled that the letter was not defamatory per se. At the conclusion of the plaintiff's case the court granted all defendants' motion to dismiss as to the claims of Marx Elmer, finding that Marx Elmer had not met his burden of establishing the elements of defamation. The district court also found that regardless of whether the elements of defamation had been established, Marx Elmer's claims were waived due to the authorization and release signed by him in his application for admission to the District of Columbia Bar.
The trial continued as to the other plaintiffs' claims. The court found that Albert and Rosetta Elmer failed to establish by a preponderance of the evidence that they personally suffered any injury as a result of the letter. In a well-written opinion, the trial court also reviewed its reasons for granting the motions to dismiss as to the claims of Marx Elmer. Judgment was rendered rejecting all claims and demands of all plaintiffs.
Plaintiffs have appealed asserting the following assignments of error:
(1) The trial court erred in making a pretrial determination that the content of the letter of October 16, 1978, was not defamatory per se, thus denying to plaintiffs the legal presumptions that said defamatory words were false and published with malice;
(2) The court erred in denying plaintiffs the right to amend the pleadings to conform to the evidence pertaining to the three versions of the letter and the publications thereof;
(3) The court erred in granting the motion to dismiss the claims of Marx Elmer at the close of the case for the plaintiffs and erred in finding that the elements of defamation had not been established as to Marx Elmer;
(4) The court erred in finding that privilege or waiver would defeat the claims of Marx Elmer;
(5) The court erred in denying plaintiff's right to introduce the deposition of Gerald R. Coplin for the purpose of showing prior contradictory testimony;
(6) The court erred in finding that the elements of defamation had not been established as a matter of law and fact as to Rosetta Elmer, Marx Elmer, and Albert Elmer; and
(7) The court erred in denying the claims of Marx Elmer, Rosetta Elmer, and Albert Elmer as alleged and prayed for in the pleadings.
In Louisiana, defamation is a quasi offense and as such is governed by LSA-C.C. Art. 2315. The essential elements of a cause of action for defamation are the same as those for any other offense or quasi offense arising under the provisions of Article 2315, that is, fault, causation, and damage.
As a guide to determining fault, causation, and damage in defamation actions certain rules and principles of law have been developed and are firmly established in Louisiana. These principles were set forth in Carter v. Catfish Cabin, 316 So.2d 517 (La.App.2d Cir.1975), as follows:
The essential elements of a defamation action are (1) defamatory words; (2) publication, that is, communication to some person other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958); Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454 (La.App. 3d Cir. 1973); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3d Cir.1968); Comment, 28 La.L.Rev. 82 (1967). The threshold issue is whether the words are defamatory, that is, capable of a defamatory *176 meaning. Fleming v. Michot, 295 So.2d 821 (La.App. 2d Cir.1974), writ refused 299 So.2d 802; Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App. 2d Cir.1971). If the words are defamatory on their facedefamatory per sefalsity and malice are presumed and the defendant has the burden of rebutting the presumption. Martin v. Markley, 202 La. 291, 11 So.2d 593 (1942).
Truth is an absolute defense to an action for defamation. Pool v. Gaudin, 209 La. 218, 24 So.2d 383 (1945). Another defense is justification or privilege. Privileged communications are divided into two general classes: (1) absolute or unqualified; and (2) conditional or qualified. An absolute privilege exists in a limited number of situations, such as certain statements by judges and legislators in their official capacities. In a broader number of instances, statements enjoy a conditional privilege. Madison v. Bolton, supra; Toomer v. Breaux, 146 So.2d 723 (La.App. 3d Cir.1962).
The essential elements of a conditional privilege are described in Madison v. Bolton, supra, as "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only". In Toomer v. Breaux, supra, it was held that a conditional privilege is applicable "if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate."
The five elements necessary to maintain a defamation action were reiterated in Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La.1980). See also Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir.1985); Desselle v. Guillory, 407 So.2d 79 (La.App. 3d Cir.1981), writ denied, 412 So.2d 83; Palmer v. Fireman's Fund Ins. Co., 395 So.2d 396 (La.App. 1st Cir. 1981), writ denied, 400 So.2d 668; Grimes v. Stander, 394 So.2d 1332 (La.App.1st Cir. 1981). Compare Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3d Cir.1981) in which Judge Foret's scholarly opinion approached a defamation action from a duty-risk standpoint without resort to the often stated rules.
Plaintiffs' first assignment of error is that the trial court erred in making a pre-trial determination that the content of the letter was not defamatory per se and in thus denying to plaintiffs the legal presumptions that the defamatory words were false and published with malice.
A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community. Defamatory communications violate one's right to a good reputation and give rise to a cause of action to recover damages because of the violation. Freeman v. Cooper, 414 So.2d 355 (La.1982).
Words charged to be libelous have been classified as those that are susceptible of a defamatory meaning and those which are indisputably defamatory on their face. Words in the latter category are defamatory per se; they impute to the person the commission of a crime or subject him to public ridicule, ignominy, or disgrace, and are susceptible of but one meaning. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958).
Words are defamatory when they have a tendency to deprive a person of the benefits of public confidence or injure him in his occupation or have a natural tendency to injure the person's reputation. When the words themselves have those results, even without considering extrinsic facts and surrounding circumstances, they are defamatory per se. Cashio v. Holt, 425 *177 So.2d 820 (La.App. 5th Cir.1982); Makofsky v. Cunningham, 576 F.2d 1223 (5th Cir. 1978). Words which impute a crime to another are defamatory per se. Cangelosi v. Schwegmann Bros. Etc., supra. So are words that tend to adversely affect the person's business or profession. Wiel v. Israel, 42 La.Ann. 955, 8 So. 826 (1890). When words themselves have a natural tendency to injure a person and his occupation or to injure his reputation, even without considering extrinsic facts or surrounding circumstances, they are defamatory per se. Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir.1985).
The remarks contained in the letter from Coplin to the National Conference were defamatory per se. The letter accused Marx Elmer and Albert Elmer with furnishing data which was false and misleading and which was utilized in the sales presentation to defraud the purchasers. It accused Marx Elmer of purposefully failing to disclose difficulties in connection with the proposed sale. The letter accused Marx Elmer of using corporate funds for his personal use and charging them as business expenses, with secreting financial information, and with misrepresenting financial information so as to induce the purchase by Coplin's clients. The letter states that Marx Elmer's legal qualifications are severely impugned by his lack of business integrity and expresses the opinion that he is not of good moral character and that his legal qualifications are of a low nature. The letter seriously attacks the moral character of Marx Elmer and his legal qualifications and his lack of moral turpitude and character. The opinion is expressed that he should be disbarred for his acts and conduct. Marx Elmer was specifically accused of fraud and deception and a cover up.
Obviously, the content of the letter seriously impugned the character, reputation, honesty, and legal qualifications of Marx Elmer. There were also references to fraud and deception on the part of Albert Elmer. The words clearly tend to harm Marx Elmer in the pursuit of his profession.
Since the words written in the letter are defamatory per se, falsity and malice are presumed.
The evidence presented by the defendants falls far short of overcoming the presumption of falsity or proving that the statements contained in the letter were true. The allegations were found not to be true in the federal court litigation which was terminated favorably to the Elmers. At best, as will be more fully discussed subsequently in this opinion, the defendants established only that they had reasonable grounds to believe that the allegations were true at the time the letter was written, which is substantially less than proving that the allegations were, in fact, true.
The issue of whether or not the defendants successfully rebutted the presumption of malice overlaps with a consideration of the defenses asserted by the defendants based on privilege and the release executed by Marx Elmer. Questions of malice, intent, and good faith are involved in the determination of each of these defenses.
As previously noted, good faith is one of the essential elements of a conditional privilege. Madison v. Bolton, supra. In this context good faith means a statement made with reasonable grounds for believing it to be true. Only when lack of such reasonable grounds is found can it be said that the person uttering the statement is actuated by malice or ill will. Ward v. Sears Roebuck & Co., 339 So.2d 1255 (La. App. 1st Cir.1976).
Similarly, although the release from liability executed by Marx Elmer is broad and all inclusive in its terms, a release from future liability cannot protect one from damages for an intentional tort or for actions taken in bad faith or with ill will or malice. LSA-C.C. Art. 11; Diamond Crystal Salt Co. v. Thielman, 395 F.2d 62 (5th Cir., 1968); Hayes v. Hayes, 8 La.Ann. 468 (1852).
The defendants are protected from liability arising out of the letter written by Coplin to the National Conference of Bar Examiners by the broad terms of the release *178 executed by Marx Elmer and by a conditional or qualified privilege, if the letter was written in good faith and without malice. The letter was written within the scope of the authorization by Marx Elmer in connection with his application for admission to the District of Columbia Bar on a subject matter in which the person communicating had an interest and a duty, and the letter was written to a person having a corresponding interest or duty.
In Toomer v. Breaux, 146 So.2d 723 (La. App. 3d Cir.1962), a conditional privilege was applied in a defamation action to a communication by a former client to the bar association charging his attorney with negligence. The court noted the social interest of the public, the courts, and the bar itself in affording the fullest possible investigation by those lawfully entitled to do so of grievances alleged against the conduct of attorneys in order to either correct abuses complained of or else to expose such complaints as unfounded if the investigation so indicates.
In Bufalino v. Teller, 209 F.Supp. 866 (M.D.Pa.1962), heavily relied on by the defendants and the trial court in this case, the court held that a communication by an attorney to the National Conference of Bar Examiners accusing the applicant of having Mafia connections enjoyed an absolute privilege because of the authorization and release signed by the applicant and because the information was furnished in response to the conference's request for information. In that case the court also recognized the importance of obtaining unhampered, full information concerning an applicant for admission to the bar, the importance of the requirement of high moral character, honesty and integrity of candidates for admission to the bar, the duty of an attorney to make full disclosure of information and opinions bearing on the qualification of the applicant, and that freedom of action in that regard must not be restricted by the danger or fear of defamation suits.
It is to be noted that in the Toomer case the court expressly did not decide whether the privilege is absolute or qualified, since it was determined in that case that in either event the communication was privileged because there was no showing of malice or unreasonable publication. Louisiana has been more restrictive in applying an absolute privilege than have most other jurisdictions. For example, statements by attorneys contained in judicial pleadings enjoy an absolute privilege in many other states, but only a conditional or qualified privilege in Louisiana. Freeman v. Cooper, supra. As in Toomer, it is not necessary for us to precisely decide whether or not the communication in this case is entitled to an absolute or a conditional privilege because we find in this case that the conditional privilege applies and protects the defendant against liability.
Our determination that the conditional privilege applies turns on our finding that the defendants acted in good faith with reasonable grounds for believing that the statements contained in the letter were true. At the time the letter was written, the parties were engaged in serious litigation brought by the defendants to rescind the sale based on allegations of fraud. Coplin, the attorney who drafted the letter, had made an extensive investigation into the facts surrounding the sale. The investigation had revealed that there were in fact errors or discrepancies in the financial statements prepared by the certified public accounting firm and furnished to the purchasers. There had been a recent change in accounting methods, primarily related to the values assigned to "marked down" goods in the business inventory, which affected the statement of the net worth of the company. These matters were disclosed to Coplin in a statement taken from the person in charge of keeping the company's financial records and in a statement from a member of the accounting firm. It had also been revealed that the accounting firm which furnished the audit report had entered into an agreement with the selling stockholders whereby the firm would receive a commission on a sale of the company stock. It was also revealed that the attorney for the inactive selling shareholders had some concern for the accuracy of the financial information being furnished to the purchasers. All circumstances considered, it was not unreasonable for Coplin *179 and his clients to believe at the time the letter was written that the financial situation of the company had been misrepresented. Considering the reasonable grounds for this belief and the attorney's duty under the Code of Professional Responsibility to disclose information he thought might bear on the qualifications of an applicant for admission to the bar, the preponderance of the evidence is that Coplin and his clients acted in good faith and without malice or ill will.
The only publication of the letter was to the National Conference of Bar Examiners, among the defendants themselves, to persons within the corporate structure, to another attorney representing the corporate defendants, and, by error, to the plaintiffs. The scope of the qualified privilege extends to the reasonably necessary use of clerical personnel in the transmission of privileged communications, as well as to the incidental publication thereof to employees or associates of either the sender or the receiver, providing such incidental publication is in the usual course of business and is reasonably necessary to effect the communication of the privileged matter to those entitled to receive it. Toomer v. Breaux, supra; Cashio v. Holt, supra; Commercial Union Insurance Co. v. Melikyan, 424 So.2d 1114 (La.App. 1st Cir.1982). There was no publication beyond the scope of the conditional privilege.
The senior Elmers were mentioned in the letter only peripherally and as explanatory of the accusations against Marx Elmer and of the circumstances from which the accusations arose. The references to the senior Elmers fall within the scope of the conditional privilege afforded to the contents of the letter.
Additionally, we find no error on the part of the trial court in determining that Albert Elmer and Rosetta Elmer sustained no damages by reason of the writing and limited publication of the letter. Their principal concern, understandably, was with the damage which might be done to their son. A defamation is personal to the party allegedly defamed and a relative, no matter how devoted he or she may be, has no right to recover for the defamation of another. Pattison v. Gulf Bag Co., 116 La. 963, 41 So. 224 (1906); Coulon v. Gaylord Broadcasting, 433 So.2d 429 (La.App. 4th Cir. 1983). Albert Elmer candidly testified that he had not sustained any embarrassment or damage to his reputation by reason of the letter. Mrs. Elmer was not mentioned by name in the letter. For these additional reasons, the trial court correctly rejected any claim for damages by Albert and Rosetta Elmer.
Likewise, the trial court was correct in rejecting any claim for punitive damages and reasonable attorney's fees by either the plaintiffs or the defendants under the provisions of LSA-C.C. Art. 2315.1, which was added by Act 217 of 1976 and repealed by Act 324 of 1980. The defamatory statements on which the action was based were not made with knowledge of falsity or with reckless disregard of whether they were false or not, and the plaintiffs' action was not frivolous.
The trial court did not err in denying plaintiffs the right to amend their pleadings to expand the scope of their demands during the course of the trial. Nor did the court err in not allowing the plaintiffs to offer Coplin's deposition for the purpose of showing contradictory prior testimony, as no proper foundation was laid.
For the reasons assigned, the judgment of the district court is affirmed, at appellants' cost.
AFFIRMED.

APPENDIX A

PERSONAL AND CONFIDENTIAL

PASSMAN, JONES, ANDREWS, COPLIN, HOLLEY & CO.

ATTORNEYS AT LAW

2525 ONE MAIN PLACE

DALLAS, TEXAS 75250
 October 16, 1978
National Conference of Bar Examiners Suite 1025 333 North Michigan Avenue Chicago, Illinois 60601

*180 Re: Marx Michael ElmerM. Levy Company of Shreveport, Inc.
Gentlemen:
Your correspondence bearing the date of September 28, 1978 addressed to the Director of Personnel of our corporate client, M. Levy Company of Shreveport, Inc. has been referred to us for response. Our response applicable to Marx Michael Elmer is predicated upon your request of September 28, 1978, and the matters of fact or which are in dispute applicable to Marx Michael Elmer which have been brought to the attention of either the client or this firm.
In your letter of September 28, 1978, it is indicated that the Applicant stated he was engaged in corporate legal work from August, 1974 to June, 1977. Clients of this firm purchased the stock of M. Levy Company of Shreveport, Inc. under a contract which bore the effective date of June 30, 1977. Subsequent to the acquisition, litigation has ensued, under which the purchasers of the stock filed a complaint in the Northern District of Texas, Dallas Division, against Marx Michael Elmer, and other members of his family claiming fraud and deception in the sales transaction. Such cause of action is yet pending. Marx Michael Elmer has filed an answer in such proceeding.
One of the primary predicates for the pending complaint is that the selling parties warranted and represented that the financial information pertaining to the corporate entity, prepared by the firm of Heard, McElroy & Vestal was true and correct. It has been ascertained to the satisfaction of our client as well as the opinion of this firm that the data furnished under the direction and control of Albert Elmer and Marx Elmer was false and misleading, and utilized in the sales presentation to defraud the purchasers.
Marx Michael Elmer has been deposed, and Exhibit No. 7 of his deposition is attached hereto as Exhibit "A". There has also been ascertained in the course of discovery that prior to the consummation of the transaction Marx Michael Elmer knew or should have known of other difficulties in the proposed sale, but that he failed and refused to disclose these matters as either a businessman or licensed counsel, and that such failure to disclose was purposeful.
Whether or not Marx Michael Elmer engaged in corporate legal work for the M. Levy Company of Shreveport, Inc. is one of the central issues asserted by the clients of this firm, our claim being that Marx Michael Elmer, both individually as well as an attorney, had not only contracted to present correct financial information, but in addition thereto, as an attorney owed a high degree of trust beyond that as might have been required of a layman. Obviously, Exhibit "A" hereto rendered any financial data presented by the accountants questionable, especially considering that they had a vested interest. The clients of this firm offered to rescind the transaction but Marx Michael Elmer (et al) failed and refused to do so and hence the litigation.
In that you have requested comments as to the legal qualifications of Marx Michael Elmer, it is the duty of our client to report that it has further ascertained, by a review of the books and records of the Company and cancelled checks, that Marx Michael Elmer used corporate funds for his personal use and benefit though charging them as business expenses, that Marx Michael Elmer secreted financial information and/or misrepresented financial information so as to induce the clients of this firm to purchase and acquire when, had there been full and complete disclosure, they would not have acquired. Concisely, the "legal qualifications" of Marx Michael Elmer are severely impugned by his lack of business integrity, and it is the opinion of the clients of this firm that he is not of good moral character and that his legal qualifications are of a low nature, considering the additional factor that M. Levy Company of Shreveport, Inc. did not keep and maintain requisite corporate documents and that an attempt was made to "back date" information, apparently under the auspices and control of Marx Michael Elmer, at minimum *181 he acting in concert with others who are now being sued for their fraud and deception.
In conclusion, the moral character of Marx Michael Elmer is seriously attacked by the clients of this firm and his legal qualifications are therefore subject to his lack of moral turpitude and character. Exhibit "A" was not disclosed by Marx Michael Elmer until the time of his deposition and was not, as such, voluntarily disclosed until severe examination had ensued.
In the opinion of the clients of this firm, if a similar request for response were made by the Bars of California and Louisiana, they would respond that he should not maintain his membership and should be disbarred for his acts and conduct. Marx Michael Elmer had personal interest in the sale, had personal knowledge of the true and actual financial condition of the Company, but failed and refused to disclose such information for his own personal gain and benefit. The other parties signatory to Exhibit "A" are the parents of Marx Michael Elmer, but family relationship is no excuse for fraud and deception.
For but one further example, the accounting firm mentioned in Exhibit "A" recognized that the financial data obtained in 1977 was erroneous, and prepared though not filed an amended tax return which affected the net worth of the Company of a considerable nature and magnitude. I might further add that litigation has further ensued against the accountants by not only the purchasers but, in the opinion of the undersigned, as a "cover up" Marx Michael Elmer, et al have also sued the accountants.
Should you have any further questions or request additional data or documents, it is requested that you contact the undersigned for immediate response.

Very truly yours,

PASSMAN, JONES

ANDREWS, COPLIN,

HOLLEY & CO.

Gerald R. Coplin
GRC:ts
Encl.
cc: M. Levy Company of Shreveport, Inc.
APPENDIX B

*182