NICHOLLS, J.
The plaintiff seeks in this suit to recover $10,000 as damages for a libel (concerning him) charged to have been published throughout the state in the Daily Picayune, a newspaper which the defendant company is engaged in publishing. Plaintiff averred: The said paper to be a newspaper of great influence and wide circulation. That in its issue of October 11, 1906, in its report of the trial of the case of the State of Louisiana v. Bud Caron and Hines Hughes, ae-. eused of the murder of Eugene H. McClen-don, of Kentwood, La., it published the name of petitioner as one of the jurors impaneled and sworn to try said cause, and .as a,matter of fact petitioner was sworn “well and truly to try and true deliverance make between the state of Louisiana and the said prisoners at the bar,” to wit, Bud Caron and Hines Hughes. And, having so published your petitioner as one of the jurors in the trial of the said case in its issue of the 22d of October, 1906, it published and gave utterance to the false and malicious accusation said to have been uttered by the said Bud Caron and Hines Hughes, who had been convicted of the murder of Eugene McClendon, as follows:
“Bud Caron and Hines Hughes, who were convicted of the murder of Eugene H. McClen-don in Kentwood, La., and sentenced to life imprisonment, concurred yesterday in saying that the jurors which convicted them last week at their trial at Amite City ‘was jobbed,’ meaning thereby that your petitioner and the other jurors had violated their oath, and had been bribed to bring in a verdict of guilty. And in the same article the said paper falsely, wickedly, and maliciously published that Hines Hughes said: T did not expect such a result. The only way it can be explained is that the jury was “jobbed.” I did not pretend to know how it was done or who did it, but it is my belief that the money which the people of Kentwood raised to prosecute Caron and myself was used to fix the jurors — that’s what everybody said about the matter. There was not a particle of evidence against me. Those who heard all the testimony which the state presented said after it was over that I should never have been convicted.’ And again Caron said: ‘There is no doubt about the jurors having been fixed. There was no evidence to convict us. We all thought that Hines would be acquitted and that I would get a mistrial. The only reason that this was not the outcome was because the jurors had been “jobbed” everybody says that.’
“Meaning thereby to allege and charge that your petitioner, with the other jurors, had violated his oath of office, and had concurred in the conviction of two men for murder without evidence to sustain the verdict, and because petitioner with the other jurors impaneled and sworn to try the case had been bribed, which is the ordinary meaning attached by the public to the word ‘jobbed’ in the connection, and which charge against petitioner was false, wicked, and malicious and none of them were uttered by Caron and Hughes, and by said false and malicious publication of the libelous matter by the said Nicholson Publishing Company petitioner has been damaged in the sum of ten thousand dollars ($10,000) and copies of the said libelous publication are hereto annexed and made part of this petition.
“In view of the premises, petitioner prays that the Nicholson Publishing Company, Limited, be cited and condemned to pay to peti *475 tioner ten thousand dollars ($10,000) with 6 per cent, interest per annum from date of judgment with costs and for general relief.”
Defendant answered, pleading first a general denial. Further answering, it admitted that in the issue of October 22, 1906, it did print and publish a news story of and concerning the trial of “Bud Caron and Hines Hughes, at Amite City,” a copy of which is hereto annexed and made part of this answer.
Further answering, defendant shows that in the article complained of the name of the plaintiff was not mentioned, nor was his name .associated or connected with the publication complained of.
Further answering, defendant shows that it did not give currency to any false or malicious accusations against plaintiff, but that it printed simply the story or complaint of the unfortunate persons who stood convicted of the crime and under a sentence of life imprisonment for life, and who gave expression ■of their feeling, woes, bitterness, and resentment against what seemed to them injustice ,or wrong done them; that the publication was made without the least malice towards the plaintiff, and without purpose to injure or affect him in any slightest degree, or in any way, and defendant avers that the plaintiff has not been affected or injured in any degree or in any way by the aforesaid publication. Respondent further shows that, if any injury or damage has come to the plaintiff by reason of the said publication, it has come because of his suit or petition herein filed, by which he voluntarily associated himself with the statement made by Caron and Hughes as ;set forth in the aforesaid publication.
In view of the premises, respondent prays •that the plaintiff take nothing by his suit, :and that the same be dismissed at his costs.
The district court rendered judgment in favor of the plaintiff for $100 with legal interest from the date of the signature of the judgment.
Defendant appealed.
Plaintiff in the Supreme Court prayed that the judgment be increased to $10,000.
In the brief filed by counsel of the plaintiff they say that in the paper of October 11th the Picayune called attention to the trial as follows:
“Jury Completed in the Caron-Hughes Case. Taking of Testimony Begins in the Trial at Amite City.
“Eyewitnesses Describe the Killing of McClen-don by Caron.
“Damaging Evidence Brought Out Against Both of the Prisoners.
“One Witness Testified Hughes Urged Caron to Fire the Fatal Shot.
“(Staff Special to the Picayune.)
“Amite City, La., Oct. 10.
“The jury in the case of ‘Bud’ Caron and Hines Hughes charged with the murder of E. H. McClendon, in Kentwood, August 11, was completed this morning at 10:30 o’clock, just forty-eight hours and fifteen minutes after the examination of regular and special veniremen, begun, Monday morning at 10:15 o’clock. During that time 106 veniremen were summoned, and ninety-seven were examined before the twelve necessary were obtained.
“The complete' jury is as follows: John C. Albin, clerk; S. J. Lander; Angus K. Tate, clerk; C. W. Booty, farmer; T. L. Mydland, farmer; Angus K. Tate, clerk; C. W- Stuart, machinist; Thomas Lenoir, clerk; John B. Lawrence, clerk; Thomas Jones, machinist; R. S. Thomas, farmer; J. W. Brooke, farmer and mill owner.”
Counsel then say:
“In their issue of the 22d of October the Picayune published the following outrageous libel on the jurors in the case as follows:
“ ‘Caron and Hughes are Sore Over the Verdict in Their Case.
“ ‘And Abuse the Jury Instead of Expressing Regret Over the Kentwood Killing.
“ ‘ “Bud” Caron and Hines Hughes, who were convicted of the murder of Eugene H. McClen-don, in Kentwood, La., and sentenced to life imprisonment, concurred yesterday in saying that the jury which convicted them last week at their trial at Amite City was “jobbed.”
“ ‘Caron and Hughes are in the Parish Prison awaiting the outcome of the appeal which their attorneys have taken to the Supreme Court. Hughes has changed little, if any, since the long trial began at Amite City, October 8. He' is the same happy-go-lucky fellow, and lapses into seriousness only when he is remind *477 ed of the dreary prospect of a life term in the penitentiary or when his wife and little children are spoken of. “I did not expect such a result,” said Hughes. “The only way it can be explained is that the jury was ‘jobbed.’ I do not pretend to know how it was done, or who did it, but it is my belief that the money which the people of Kentwood raised to prosecute Caron and me was used to ‘fix-’ the jury. That is what everybody says about the matter. People in Amite say we should have gone free. There was not a particle of evidence against me. Those who heard all the testimony which the state presented said after it was over that I should never have been convicted. Even the attorneys for the prosecution were surprised. Of course they did not tell me they were surprised, but I understood in Amite that they were the most surprised people there when the verdict was rendered. I would much rather be in New Orleans than in Amite, because there are much better accommodations there and it is just as easy for my wife to come to New Orleans as it is for her to go to Amite. She does not have to pay any car fare and it is only a little further to New Orleans from Kent-wood than it is to Amite.”
“ ‘Caron looks like he has lost twenty or twenty-five pounds since the trial began two weeks ago. His face is sunken and he has a troubled look. The expression of pain is probably caused by his suffering from rheumatism, which has stiffened his right leg and is giving him a great deal of trouble.
“ ‘ “There is no doubt about the jury having been ‘fixed,’ ” said Caron yesterday. “There was no evidence to convict us. We all thought that Hughes would be acquitted and that I would get a mistrial. The only reason that this was not the outcome was because the jury had been ‘jobbed.’ Everybody says that.” ’ ”
The allegations of plaintiff’s petition on which he bases his action is that:
“In its issue of the Picayune of the 22d of October, 1906, the defendant company published and gave utterance to the false and malicious accusation said to have been uttered by Bud Caron and Hines Hughes who had been convicted of the murder of Eugene H. McClen-don as follows:
“ ‘Bud Caron and Hines Hughes who were convicted of the murder of Eugene H. McClen-don at Kentwood, La., and sentenced to life imprisonment, concurred yesterday in saying that the jurors who convicted them had been “jobbed,” meaning thereby that plaintiff and the other jurors had violated their oath and had been bribed to bring in a verdict of guilty, and in the same article the said paper falsely and maliciously published that Hines Hughes said * * * [reciting what the said articles published as being the statements of Caron and Hughes], which charge against petitioner [plain-stiff’s petition alleges] was false, wicked and '"malicious and none of them were uttered by ’(Caron and Hughes.’ ”
It was further alleged that:
“By said false and malicious publication of the libelous matter by the said defendant, petitioner had been damaged in the sum of ten thousand dollars.”
It was admitted on the trial that if Mr. A. A. Holcoombe, the reporter of the Picayune, who was the author of the article published in 'the Picayune of October 22d, were present in court, he would testify that the statements of Caron and Hughes therein contained were printed as given to him; that he reported them correctly; that he reported what they said, and was actuated by no malice. It was further admitted that Hughes and Caron were granted a new trial by the Supreme Court, that on the new trial a severance was obtained, and that they were both separately tried and acquitted.
The averment made in plaintiff’s petition that the statements declared in the Picayune of the 22d of October to have been uttered by Caron and Hughes were not in fact made by them is negatived by the record. In disposing of the case, that particular feature of the charge has to be eliminated, and we have to deal with the rights of parties from the standpoint that Caron and Hughes did make the statements attributed to them and that they were correctly reported. . No malice in fact (that is malice in the sense of spite or ill will on the part of the defendant towards the plaintiff) has been established. Plaintiff’s counsel do not urge that there existed that character of malice on the part of the defendant towards the plaintiff.
They insist, however, that defendant is chargeable with malice “in law,” in that defendant on the 22d of October “committed a wrongful act intentionally without justification or excuse which act was injurious to him.”
Neither the defendant company nor its reporter charged directly of indirectly that the jury before which the case of the state against Caron and Hughes was tried had *479 been tampered with or bribed, nor did either the one nor the other give its support or lend its influence in support of the statements which they, the convicted men, had made just after their conviction. The statements themselves were unquestionably false and the Picayune unquestionably published them, and therefore in one sense, it published “false statements,” but, as to what had been said by Caron and Hughes, the Picayune’s statement was not false.
The question then is: Is the defendant corporation liable in damages to the plaintiff for having published their statements? We have not the slightest idea that the defendant intended to injure plaintiff or to bring him into disrepute, but we have to go back of the defendant’s intention and inquire whether the particular publication complained of had a tendency to injure plaintiff or bring him into disrepute; for, if its character was such as to naturally and reasonably lead to that result, defendant should not and could not be absolved from all blame.
In determining the question of the liability of the defendant, it is our duty to take into consideration all the circumstances of the case. We should give weight to every fact having a legal bearing on the publication. We must consider the occasion on which it is made, to ascertain how far, in view of that occasion and of everything that was then said by the defendant with reference to the matters published, whether the publication should, as to its character, be held to be libelous or not.
Our conclusion must be based upon the situation taken as a whole. In Newell on Defamation, Slander and Libel, § 29, the author says:
“The sting of a libel may sometimes be contained in a word or sentence placed as a heading to it. The defendant will often be held liable merely in consequence of such prefix, where, without it, he would have had a perfect answer to the action. So a word added to the end may vary the sense of the preceding para- ¡ graph.
“The defendant is therefore entitled to have 1 the whole alleged libel read as part of plaintiff’s case. And for the purpose of showing that what he wrote was no libel, and will not bear the construction which the plaintiff seeks to put upon it, he may give in evidence any other passages in the same publication which plainly refer to the same matter or which qualify or explain the passage sued on.”
In this particular case our attention was at once drawn to the head lines preceding the publication which were as follows:
“Caron and Hughes Are Sore Over the Verdict in Their Case and Abuse the Jury Instead of •Expressing Regret Over the Kentwood Killing.”
Under these headlines is the declaration:
“That Caron and Hughes, whose statements were given below had been convicted of the murder of Eugene H. McClendon, in Kentwood, La., and sentenced to life imprisonment.”
Did the publication of the statements made by Caron and Hughes under the circumstances then disclosed and announced, preceded as it was by the headlines just copied, constitute a libelous publication?
A publication, said Blackford, Judge (in Armentrout v. Moranda, 8 Blackf. [Ind.J 426), to be a libel, must tend to injure the plaintiff’s reputation and expose him to public hatred, contempt and ridicule. A libel, said Chief Justice Booth in State v. Jeandell, 5 Har. (Del.) 475, is a malicious publication in printing, writing, signs, or pictures imputing to another something which has a tendency to injure his reputation, 'to disgrace or degrade him in society, and lower him in the esteem and the opinion of the world, or to bring him into public hatred, contempt, or ridicule.
It is very apparent from the headlines to the publication in question that the defendant was not giving its countenance to the remarks of Caron and Hughes. Instead of doing so, they very plainly show that they were referred to as the remarks customarily made by convicted parties in reference to the jury or judge who had found them guilty.
They were published as remarks discredited by the situation of the parties who made *481 them. No one reading that publication preceded by its headlines could say that the publication tended naturally and reasonably to injure the reputation of the jury. The publication taken as a whole was condemnatory of and a reflection upon Caron and Hughes for indulging in the abuse customarily heaped by convicted men upon court and juries, instead of expressing regret for the crime of which they had just been convicted.
The evidence shows that the plaintiff in this ease was a man of position and character, that he suffered no injury from the remarks by the convicted parties, and that he has always maintained his standing in the community in which he lived. No one could doubt that this would be so.
We do not find that the publication complained of was libelous in character. Plaintiff’s demand is neither just nor well founded.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and plaintiff’s demand is hereby rejected, and his suit dismissed.