HALL, Judge.
Plaintiff, John B. Fleming, filed suit for damages against Louis J. Michot and The Times Publishing Company, Ltd., arising out of an alleged libelous editorial published in The Shreveport Times. This appeal by plaintiff is from judgments of the district court sustaining an exception of misjoinder of parties defendant, an exception of no cause or right of action and a motion for summary judgment filed by the defendant The Times Publishing Company, Ltd.; sustaining an exception of no cause of action and a motion for summary judgment filed by defendant Michot; and dismissing plaintiff’s suit. For the reasons hereinafter expressed, we conclude the exceptions of no cause of action were properly sustained and, accordingly, affirm the judgments dismissing plaintiff’s suit.
The essential allegations of plaintiff’s petition are:
(1) Plaintiff was employed by the State Department of Education in the Shreveport Office of Vocational Rehabilitation. He was qualified to perform the job duties and diligently met all job requirements of his position.
(2) Defendant Michot is the elected Superintendent of Education of the State of Louisiana, but had not taken office at the time of the interview referred to in the editorial complained of.
(3) The defendant publishing company is the owner of The Shreveport Times, a newspaper published each morning in Shreveport and sold and distributed throughout the State of Louisiana and other states, ,with a large circulation.
(4) The April 30, 1972 edition of The Shreveport Times contained an editorial written by Stanley R. Tiner, an employee of the defendant publishing company, defaming plaintiff by stating, among other things:
“(a) That plaintiff, as an employee of the Louisiana Department of Education, was one of many ‘Dodd cronies’ ;
“(b) That plaintiff was part of a ‘network of deadheadism’ existing in the Louisiana Department of Education;
“(c) That plaintiff as an employee of the Vocational Rehabilitation Department of the Louisiana Department of Education performed no useful service for the State, and;
“(d) That plaintiff was one of those persons in the Louisiana Department of Education who actually spent very little time on the job performing his duties.”
(A copy of the editorial is attached to and made a part of plaintiff’s petition).
(5) The statements in the editorial resulted from an interview of Michot by Tiner, who independently enlarged and contributed to the defamatory character of the article.
(6) The article and statements made by Michot and Tiner exposed plaintiff to contempt, ridicule, embarrassment, disrepute and humiliation. They lowered his reputation, both generally and with respect to his occupation, in the opinions of his friends and the general public. They inferred that plaintiff was incompetent in his job with the Louisiana Department of Education, that he did not perform the duties of his job adequately, and that he was being paid while not performing any duties with the Louisiana Depart *823 ment of Education. The statements and article were intended by defendants to discredit and did, in fact, discredit plaintiff’s character and reputation. The statements pertaining to plaintiff’s alleged association with former superintendent, William J. Dodd, or to the caliber of the performance of his job duties or the nature of the job, are denied. The allegations concerning plaintiff constitute an unwarranted, false, malicious and libelous attack on plaintiff’s personal and professional reputation.
(7) The statements of Michot and Tiner were made with a known falsity or with a reckless disregard of truth or falsity. Michot’s statements were a reprisal for plaintiff’s failure to support Michot in his political campaign for office.
(8) On December 5, 1972, Michot terminated plaintiff from his job with the Louisiana Department of Education.
Plaintiff prays for damages in the total amount of $500,000.
The editorial complained of is reproduced as an appendix to this opinion.
The grounds for the peremptory exceptions of no cause of action filed by defendants can be summarized as follows:
(1) The editorial contained no words, language or expression constituting a defamation of plaintiff or a libelous attack on plaintiff’s personal and professional reputation.
(2) The publication of an accurate account of matters of legitimate public interest is not actionable.
(3) Plaintiff’s petition identifies him as a public official or public figure involved in matters of legitimate public concern and as such even inaccurate published statements concerning his conduct are not actionable unless published with actual malice, that is, with knowledge of their falsity or with reckless disregard of whether they are true or false. No facts constituting actual malice are alleged in plaintiff’s petition.
In Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App. 2d Cir. 1971) this court held:
“The threshold issue in any libel action is whether or not the statements made are defamatory or libelous.
“A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person’s reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. Madison v. Bolton, 234 La. 997, 102 So. 2d 433 (1958); Mulina v. Item Co., 217 La. 842, 47 So.2d 560 (1950); Tate v. Nicholson Pub. Co., 122 La. 472, 47 So. 774 (1908).
“An exception of no cause of action admits, for the purpose of consideration of the exception, all facts that are pertinent and well-pleaded in the petition. In determining whether plaintiff has set forth a cause of action for libel this court should give due weight to every portion of the articles complained of and to every fact set out in the petition. Otero v. Ewing, 162 La. 453, 110 So. 648 (1926). See also Gray v. Ouachita Coca *824 Cola Bottling Company, 126 So.2d 862 (La.App. 2nd Cir. 1961).
“Plaintiff has alleged and contends that the editorial in question portrays him as “a pig, a criminal, an incompetent, lazy and dishonest’. Accepting the well-pleaded facts of plaintiff’s petition as true, but not the conclusions drawn by plaintiff therefrom, and viewing the editorial in a light most favorable to the position of plaintiff, we nevertheless conclude that the editorial does not portray plaintiff in the defamatory manner he contends, either directly or by insinuation.”
In the instant case, plaintiff alleges and contends the editorial in question states that he was one of many Dodd cronies, was part of a network of deadheadism, performed no useful service for the state, spent very little time on the job performing liis duties, and infers he was incompetent in his job, did not perform his job adequately, and was being paid while not performing any duties. To the contrary, our conclusion is that the editorial does not portray plaintiff in the defamatory manner he contends, either directly or by insinuation.
Clearly, the article does not do so directly- — the only direct reference to plaintiff being that he is one of three local persons Michot expected to terminate, with mention of his position and salary. According to the petition, he was in truth and fact terminated.
Neither does the article make the alleged accusations or derogatory statements about plaintiff by inference. The overall tenor of the article is that a substantial reduction in the number of jobs in the Department of Education was being effected in the course of the change of administration. The critical aspects of the article are directed at the previous administration of the Department and at an unnecessary number of positions and not at particular individuals holding positions in the Department. The article mentions that up to half of the 1,200 employees in the Department will be fired and that 107 workers had already been notified of their termination. Several unclassified employees being terminated are mentioned by name. The article refers to a list of persons in Northwest Louisiana who have been terminated which appeared in the news section of the newspaper. It names three local persons, including plaintiff, working in the vocational rehabilitation program who will be terminated and mentions there will be others.
The article does not accuse plaintiff individually of any wrongdoing or misconduct or incompetency by inference. It merely reports, factually, that he is one of many public employees being terminated in the changeover of administrations. He is not singled out, but is listed along with other local and area employees. The derogatory and defamatory inferences claimed by plaintiff are not present. Nothing is said about him in the article that would expose him to contempt or ridicule or injure his reputation in the mind of the average reader of the article. Any adverse implications that might arise in the mind of the reader arise from the reported events themselves, the accuracy of which is not attacked, and not from the manner in which they were commented on by Michot or written by Tiner.
In considering the exceptions of no cause of action, plaintiff’s allegations that he was qualified to perform the duties of his job and diligently met all requirements of his position are accepted as true. The editorial does not state otherwise.
Having failed to allege statements that are capable of a defamatory meaning, plaintiff has failed to set forth a cause of action and his suit was properly dismissed. In view of this conclusion, it is unnecessary to pass on the other exceptions, motions and defenses raised by the defendants.
For the reasons assigned, the judgments of the district court sustaining defendants’ exceptions of no cause of action and dismissing plaintiff’s suit are affirmed, at plaintiff-appellant’s cost.
Affirmed.
*825 The Head-Rolling Starts
Stanley R. Tiner
The rustle of movement from a new state administration is being felt in Louisiana from the shrimpboat ports to the south to piney woods in the north.
The rhetoric of a year’s campaigning is finally coming into focus as the new reality. The reforms that Edwin Edwards, Jimmy Fitzmorris, Billy Guste, Louis Michot and others talked about are now more than a speech and in some instances the shake-up has begun.

No department is feeling the change more than education where Michot, the successful Lafayette businessman, has promised a thorough housecleaning.
To wit, Michot has already sent letters to 107 education department workers notifying them that their employment will terminate on May 9 — the day he takes office. Michot has also said he intends to fire up to half of all department workers. There are currently over 1,200 employes in the education department.
There is a strong personal vendetta between Michot, a State Board of Education member, and outgoing Supt. Bill Dodd, but Michot says personal differences between him and Dodd will not influence his manner of determining who will be fired.
He feels strongly, however, that a network of deadheadism (“Doddheadism”) was deliberately fostered under Dodd’s reign in the education department, and in cutting back to the appropriate number of workers he feels many Dodd cronies will be involved.
Michot revealed to The Times this week a list of those already notified of their termination, and it shows just that — the Dodd people are out.
Hattie Whittington of Natchitoches, a guidance supervisor drawing $13,000 annually, is on the list. She is the wife of D. H. Whittington, a long-time Dodd ally who Michot recently called “a leech on the state payroll,” after Whittington wrote a letter to Gov.-elect Edwards warning him to beware of Michot. Whittington resigned last month as executive director of the State Advisory Council for Vocational and Technical Education, a post that paid $15,-000.
Another of those on the terminated list is Harold Denning of Alexandria, state administrator of federally assisted programs with an annual salary of $20,500. Denning was identified by Michot aide Jim Knotts as the brother-in-law of Wade H. Davis, director of the state school for spastic children. Davis was another Dodd friend prominently involved in the superintendent’s race and a number of controversies involving the school surfaced during the campaign.
Classified Employes Next?
All of the education department employes notified of the termination thus far are on the unclassified payroll which has caused no particular problem for Michot other than complaints from those losing their jobs.
The bulk of those he intends to terminate, however, are classified workers and subject to civil service. Michot says he believes he can legally terminate classified workers simply by eliminating the jobs and not refilling them.
*826 At the heart of the classified list are those 602 who work in the vocational rehabilitation program, long considered a hiding place for Dodd cronies. Michot contends that the bulk of these persons serve no useful service to the state, and that many actually spend very little time on the job.
Michot specifically listed three local persons he expects to terminate. They are George Nattin Jr., assistant district supervisor of Rehabilitation Unit I, with a salary of $14,000; former Shreveport Commissioner of Public Safety J. Earl Downs, a senior counselor with a salary of $11,880; and John Fleming, a counselor assistant with a salary of $9,000. He said there would also be others in the local area.
There are 11 persons working in the two Shreveport rehabilitation units with salaries of $10,000 or higher.
Among those employes in the Northwest Louisiana area notified of their termination by Michot, Dr. William Beyer of Natchi-toches, assistant superintendent of curricula and instruction, received the highest salary —$25,500.
Michot said he can make his final terminations in the department within 90 days of taking office. He says these positions will not be refilled.
Michot is committed to a thorough restructuring of the department and to an investigation into the past administration of the department. He has received a pledge from Atty. Gen.-elect Guste to have a member of his staff loaned to the education department to aid in the investigation.
The investigation will include a study of textbook purchases and depository practices, school and college construction programs, purchasing of all types of equipment, and the leasing program.
The superintendent-elect predicts that one of the largest scandals in Louisiana history will come out of the investigation. He said he will press for the prosecution of any persons shown to be involved in any wrongdoing.
(A complete list of persons from Northwest Louisiana who have been notified of their termination from the State Education Department is carried in the news section of today’s Times.)