482 So.2d 1022 (1986)
Sherwin JUNEAU, Plaintiff-Appellant,
v.
AVOYELLES PARISH POLICE JURY; Fred Juneau, President; Matt Bordelon; Anthony Desselle; Arthur Fuqua; Gaston Juneau, Jr.; Alvis Laprairie; Jan Lemoine; and, Lonnie Juneau, Defendants-Appellees.
No. 84-1054.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
*1023 Chris J. Roy, Alexandra, for plaintiff-appellant.
Charles A. Riddle, III and Thomas Papale, Marksville, for defendants-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
Plaintiff, Sherwin Juneau, instituted this suit for injunctive relief, damages and attorney's fees. He asserts that the Police Jury, as a body, and eight individually *1024 named members thereof, illegally terminated him from the office of Secretary-Treasurer, breached his contract of employment, and defamed him. Following the trial court's sustentation of an exception of no cause of action, the claims against the eight individually named defendants were dismissed, leaving only the Police Jury as defendant. After a hearing on August 15, 1984, the trial court ruled in favor of the defendant, Police Jury, holding that the plaintiff was legally discharged and therefore not entitled to be reinstated to office. Plaintiff appeals that judgment and two other rulings of the trial court.[1]

FACTS
On June 14, 1983, the Avoyelles Parish Police Jury appointed Sherwin Juneau to the office of Secretary-Treasurer. Juneau had previously served in that capacity since November, 1975. The minutes of the June, 1983 meeting reflect that Juneau was to serve a two year term, commencing June 9, 1983 and ending June 11, 1985.
On March 13, 1984, during a regular meeting of a newly elected Police Jury, Juneau was terminated as Secretary-Treasurer by an eight to seven vote. As a result of his termination, Juneau instituted the instant suit seeking reinstatement and/or payment of his salary until such time as he was granted a hearing as to the grounds for his termination, damages and attorney's fees. Juneau named the Police Jury and the following eight jury members who voted in favor of his termination, as defendants, Fred Juneau, Matt Bordelon, Alvis Laprairie, Arthur Fuqua, Gaston Juneau, Jr., Jan Lemoine, Anthony Desselle, and Lonnie Juneau.
Following institution of suit, the Police Jury and the individual defendants filed peremptory exceptions of no cause of action. The exceptions were tried and judgment rendered on April 27, 1984 in favor of the individual defendants, dismissing plaintiff's suit against them. The trial judge denied the Police Jury's exception of no cause of action by judgment dated May 4, 1984.[2] Plaintiff perfected a devolutive appeal of the trial court's ruling in favor of the individual defendants on May 16, 1984.
In the interim, plaintiff issued a subpoena duces tecum to all fifteen members of the Avoyelles Parish Police Jury and to Charles A. Riddle, III, attorney for the eight individually named defendants in the suit, seeking to discover any written memoranda or letters received by Fred Juneau from Charles A. Riddle, III, informing the former that the Police Jury could consider the office of Secretary-Treasurer vacant. The seven Police Jury members, not named as defendants to the instant suit, responded to the subpoena duces tecum that they were not in possession of the requested documents. Riddle and the eight named defendants moved for a protective order claiming that the requested documents were privileged communications between attorney and client. They also sought a ruling of contempt against plaintiff's attorneys for an alleged violation of a stay order previously issued by the trial court. A temporary protective order was issued on May 4, 1984 and a hearing was scheduled for plaintiff to show cause why the subpoena duces tecum should not be quashed and, additionally, why plaintiff's attorneys should not be held in constructive contempt for disobeying the trial court's stay order.[3] *1025 Subsequently, seven of the individually named defendant jurors (all but Fred Juneau) also responded to the subpoena duces tecum that they were not in possession of the requested documents. Fred Juneau and Charles A. Riddle, III, thereafter made another request for a protective order, reasserting their view that the requested material was privileged communications as per La.C.C.P. arts. 1422 and 1424.
A hearing was held on August 15, 1984. Pursuant to his findings at this hearing, the trial judge made permanent the previously issued protective order by judgment signed August 28, 1984. By judgment dated September 13, 1984, the trial court decreed that Sherwin Juneau was effectively and legitimately discharged by the Police Jury and therefore not entitled to reinstatment. The trial judge concluded that, since the latest possible date of any employment term for Juneau, as Secretary-Treasurer of the Police Jury, had already passed, the question of reinstatment was moot. The issues as to plaintiff's entitlement to past due wages and/or damages were pretermitted for trial by ordinary process. Plaintiff appealed devolutively from these judgments.

ISSUES
The following three issues are raised by plaintiff on this appeal:
1. Did the trial court err in sustaining the peremptory exception of no cause of action as to the eight individually named defendants and, in the alternative, by failing to allow plaintiff time to amend his petition pursuant to La.C.C.P. Art. 934?
2. Did the trial court err in sustaining defendant's motion for a protective order and quashing plaintiff's subpoena duces tecum?
3. Did the trial court err in holding that the issue of plaintiff's entitlement to reinstatement and/or payment of salary pending a valid termination was moot?

EXCEPTION OF NO CAUSE OF ACTION
Plaintiff's first appeal in this matter raises the issue of the correctness of the trial court's judgment sustaining the peremptory exception of no cause of action as to the eight individually named defendants.
The peremptory exception of no cause of action tests the legal sufficiency of the petition, and is triable on the face of the petition. For the purpose of determining the validity of the exception, all well-pleaded allegations of fact are accepted as true, and no evidence is admissible to support or defeat the exception. Any doubts must be resolved in favor of the sufficiency of the pleadings to state a cause of action. If the allegations set forth a cause of action as to any part of the demand, the exception must be overruled. Evans v. Century Ready Mix Corp., 446 So.2d 860 (La.App.2d Cir. 1984); Lott v. Landor, 452 So.2d 1266 (La. App. 1st Cir.1984), writ denied, 458 So.2d 119 (La.1984) and 458 So.2d 125 (La.1984); Smith v. Livingston Parish Police Jury, 423 So.2d 5 (La.App. 1st Cir.1982).
Plaintiff alleged in his petition that the eight individually named defendants defamed him, causing damage to his reputation and character. The following are excerpts from the petition which purportedly set forth a cause of action in defamation against the individual defendants:
"3.
... the eight members of the Avoyelles Parish Police Jury, made defendants herein, conspired and arrogantly, without any rights whatsoever, aggrandized unto themselves the function of prosecutor, judge and jury and terminated petitioner on March 13, 1984, without giving any explanation thereof ...; that defendants went further in their abuse of power and by their conduct, libeled and slandered petitioner with malice and for political reasons (petitioner is presently serving *1026 and is a candidate for the Avoyelles Parish School Board), and by their conduct left the inference that petitioner had violated some rule of the Avoyelles Parish Police Jury; that as a consequence of said dismissal and/or termination without a due process hearing, petitioner's reputation has been damaged ...
4.
... and as a consequence of Matt Bordelon's derogatory and defamatory comments with respect to petitioner's employment with the Avoyelles Parish Police Jury as well as his and the other defendants' denial of petitioner's rights to a due process hearing including notice and an opportunity to defend himself as well as specific charges leveled against him, and furthermore, as a consequence of the Avoyelles Parish Police Jury and the defendants herein having arbitrarily terminated petitioner's position in spite of their knowledge of state law, the jurisprudence and opinions of the Attorney General requiring that he be terminated only for good cause shown after a hearing and notice, petitioner has suffered injury to his reputation and damage to his property rights as stated hereinabove;...
5.
... and since reasonable inferences may be drawn from said illegal act of the Avoyelles Parish Police Jury that petitioner was guilty of improper conduct as Secretary-Treasurer of the police jury, and more specifically, since defendant, Matt Bordelon, has taken it upon himself to make such allegations at various times and request an investigation (which proves lack of evidence) and particularly in view of the fact that petitioner is a candidate for re-election to the Avoyelles Parish School Board ... petitioner is entitled to the issuance of a temporary restraining order herein as stated hereinabove... that irreparable injury is occurring to petitioner now and into the future, and until such time as he is cleared of the inferences of impropriety made by several members of the Avoyelles Parish Police Jury resulting from his illegal and unlawful termination;
. . . . .
7.
... that despite amicable demand, defendants and particularly Matt Bordelon, have continued to vilify, malign and defame petitioner and as a consequence of that conduct, petitioner's cause of action against them for libel and slander is a pendant claim to the relief sought by way of injunctions with the right of petitioner to prove, at a subsequent hearing, that he is entitled to ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS for past, present and future mental anxiety and damage to his reputation and character as a result of the conduct of said police jury plus TWENTY FIVE THOUSAND AND NO/100 ($25,000.00) DOLLARS as attorney's fees."
The appropriate inquiry at this stage is whether the allegations as set forth above are sufficient to state a cause of action in defamation as to the eight individually named members of the Police Jury. The essential elements necessary to sufficiently state a cause of action in defamation are (1) defamatory words; (2) publication (communication to someone other than the person defamed); (3) falsity; (4) malice, actual or implied; and, (5) injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980); Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App.2d Cir.1982).
We first consider whether the petition sufficiently alleges the utterances of defamatory statements.
In defining a defamatory statement, the court in Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App.2d Cir.1971), stated:
"A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; *1027 or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958); Mulina v. Item Co., 217 La. 842, 47 So.2d 560 (1950); Tate v. Nicholson Pub. Co., 122 La. 472, 47 So. 774 (1908)."
Although there are broad allegations in plaintiff's petition of the "defendants' " acts of defamation, there are no specific references to defamatory remarks made by any particular juror other than Matt Bordelon. In paragraph (4) of plaintiff's petition, it is alleged that Matt Bordelon made derogatory and defamatory remarks regarding plaintiff's employment with the Police Jury. In paragraph (5), plaintiff asserts that Matt Bordelon made allegations at various times regarding plaintiff's guilt of improper conduct in his position as Secretary-Treasurer of the Police Jury. And again, in paragraph (7) is the allegation that Matt Bordelon continues to defame plaintiff. In view of these allegations and the premise that all well-pleaded allegations of fact are accepted as true for purposes of determining the validity of the exception of no cause of action, we find that the trial court erred in sustaining the exception as to defendant, Matt Bordelon. We find that plaintiff's petition does state a cause of action for defamation against Matt Bordelon.[4] We therefore reverse the trial court's judgment insofar as it dismisses plaintiff's suit against Matt Bordelon.
We next consider whether a cause of action for defamation was sufficiently alleged against the remaining seven individual defendants. Slander is an individual tort and is thus incapable of joint commission. Ardoyno v. Ungar, 352 So.2d 320 (La.App. 4th Cir.1977), writ denied, 354 So.2d 210 (La.1978). Therefore, the plaintiff in a defamation suit must name the individual offenders and allege separate acts of defamation as to each. Except for the allegations against Matt Bordelon, such was not done in the present case. Additionally, there were no allegations of any specific defamatory statements made by the seven other defendants. In paragraph (3) of the petition, plaintiff states that the defendants "by their conduct, libeled and slandered petitioner with malice and for political reasons," and "by their conduct left the inference that petitioner had violated some rule of the Avoyelles Parish Police Jury." As previously stated, defamatory words are a requisite to an action in defamation. There can be no defamation simply by one's conduct, thus the allegations heretofore mentioned do not state a cause of action for defamation.
Paragraph (4) of plaintiff's petition refers to the defendants' denial of petitioner's rights to a due process hearing and termination of plaintiff's position with the Police Jury. Again, these are simply allegations of conduct on the part of the defendants and not claims of defamatory remarks.
Paragraph (5) of the petition refers to the damaging inferences which may be drawn from the actions of the Police Jury *1028 in terminating plaintiff from his position. Again, no allegations of defamatory remarks are stated.
Finally, in paragraph (7), plaintiff asserts that "defendants and particularly Matt Bordelon, have continued to vilify, malign and defame petitioner ...". Although here plaintiff specifically alleges defamation against the eight defendants, we do not find such broad statement to be sufficient to fulfill the requirement of defamatory words. Plaintiff does not set forth the specific words used nor does he allege when or in what manner each named defendant defamed him. As stated above, all well-pleaded allegations of fact are accepted as true for purposes of an exception of no cause of action. However, a court may nevertheless disregard allegations which are not fact but mere conclusions of the pleader. Boudreaux v. Verret, 422 So.2d 1167 (La.App. 3rd Cir.1982); Smith on Behalf of Smith v. City of Kenner, 428 So.2d 1171 (La.App. 5th Cir.1983). We regard the general allegations of defendants' defamation in paragraph (7) as simply conclusions and not statements of fact. Therefore, we find that the trial court correctly held that plaintiff's petition fails to state a cause of action for defamation against defendants, Fred Juneau, Alvis Laprairie, Arthur Fuqua, Gaston Juneau, Jr., Jan Lemoine, Anthony Desselle and Lonnie Juneau.
The Second Circuit Court of Appeal, when faced with a somewhat similar issue in Jenkins v. Ouachita Parish School Board, 459 So.2d 143 (La.App.2d Cir.1984), writ denied, 462 So.2d 652 (La.1985), concluded that the petition of plaintiff stated a cause of action. In Jenkins, a suit for damages was brought against the Ouachita Parish School Board and the principal of a school for the wrongful expulsion of plaintiff from the parish school system. Plaintiff's petition alleged that the action of the school board in expelling plaintiff constituted racial discrimination, a violation of equal protection, a taking of property without due process of law and, additionally, alleged that he was defamed in connection with the expulsion proceedings.
The Second Circuit was then faced with the issue of the correctness of the trial court's dismissal of plaintiff's action on an exception of no cause of action. Defendants alleged that the allegations in plaintiff's petition were conclusory in nature and that there were no facts alleged to support the conclusions.
The court cited from paragraph (5) of plaintiff's petition as follows:
"The principal (referring to Wright) signed a statement for plaintiff, Tommy Joe Jenkins' suspension and expulsion [sic] from school and should have known that the statements made against him were untrue."
In finding that the trial court erred in sustaining the exception of no cause of action, the court held:
"Although this allegation is vague, it is broad enough to require the admission of evidence showing: a false and defamatory statement was made; the statement was communicated to the school board; and injury, Tommy Joe's expulsion, resulted from the statement. Evidence of malice (actual or implied) could be admitted on the allegation that the principal made statements which he should have known were false and which caused Tommy Joe to be expelled from school.
Defendants argue that in order to state a cause of action for defamation, the plaintiff must allege with particularity the statement he contends is false. No authority has been cited for this contention and we found none. The defendant could have required the false statement to have been alleged with particularity by filing an exception of vagueness."
To the extent that Jenkins holds that a general conclusory allegation of defamation is sufficient to state a cause of action in defamation, we respectfully disagree and decline to follow it. However, we consider that Jenkins is factually distinguishable from the instant case insofar as *1029 the individual defendants, other than Matt Bordelon, are concerned. Matt Bordelon's alleged defamatory statements regarding plaintiff's improper conduct in office can be taken as a corollary to the written statements by the principal in Jenkins with regards to the student's expulsion from school. We also believe that the holding in Jenkins does not require a finding of a cause of action against the other seven individual defendants in the present case, against whom no real allegations of defamation were alleged except for one broad generalization that the defendants continue to "vilify, malign and defame petitioner". On the other hand, in Jenkins, the petition referred to a specific written statement wherein the defendant's purported defamatory statements were contained. Although the petition is vague as to the actual contents of the writing and the defamatory nature of the remarks contained therein, it is easy to imagine the sort of remarks which necessarily are contained in a principal's writing urging the expulsion of a student from school. We find that the allegation of this specific instrument containing alleged defamatory statements is a statement of fact which clearly distinguishes Jenkins from the present case. The petition in the instant case lacks any such specific allegations of fact against any of the individual defendants except Matt Bordelon. Therefore, we find that the trial court was correct in sustaining the exception of no cause of action as to these seven individual defendants.
We do not, however, dismiss plaintiff's action as to these Jurors. Louisiana Code of Civil Procedure Art. 934 provides:
"When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed."
Since it is conceivably possible for plaintiff to amend his petition so as to allege a cause of action for defamation against the seven remaining individual defendants, we hold that the trial court erred in refusing to allow him time in which to do so.
Counsel for the eight individually named defendants raise in brief the argument that, since the defendants were serving in their official capacity as police jury members at the time of the alleged defamation, and because of a privilege granted to them as such, that plaintiff failed to state a cause of action against them. Since we have already found that the petition failed to state a cause of action as to defendants, Fred Juneau, Alvis Laprairie, Arthur Fuqua, Gaston Juneau, Jr., Jan Lemoine, Anthony Desselle, and Lonnie Juneau, we need only address this issue insofar as it relates to defendant, Matt Bordelon.
However, under the present circumstances, we need not discuss the issue of Matt Bordelon's privilege as a member of the Avoyelles Parish Police Jury.
The defense of a qualified privilege must be specially pleaded. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979). Additionally, the introduction of certain elements of proof, such as "good faith", are required in asserting a privilege to an action in defamation. Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962). Since La.C.C.P. Art. 931 prohibits the introduction of evidence in support of or in opposition to the exception of no cause of action, it necessarily follows that the defense of immunity based upon an allegation of a privilege cannot be raised by the peremptory exception of no cause of action. Gianfala v. Allemand, 444 So.2d 150 (La.App. 1st Cir.1983). Defendant's plea of privilege was therefore improperly raised on the exception of no cause of action.

PROTECTIVE ORDER
Plaintiff-appellant's second assignment of error is that the trial court erred in sustaining the motion for a protective order *1030 and quashing plaintiff's subpoena duces tecum.
On April 27, 1984, plaintiff issued a subpoena duces tecum to the fifteen individual members of the Avoyelles Parish Police Jury and Charles A. Riddle, III, the attorney representing the eight individual defendants in the instant case. The subpoena requested the production of the following:
"The entire and unedited written memorandum, letter or any other type document received by Fred Juneau from Charles A. Riddle, III, informing Fred Juneau that the Avoyelles Parish Police Jury could consider the office of Secretary-Treasurer occupied by Sherwin Juneau, vacated."
Eventually, all police jury members, except Fred Juneau, responded to the subpoena that they were not in possession of the requested document. Fred Juneau and Charles A. Riddle, III, thereafter moved for a protective order on the following enumerated grounds:
"I. The described document, if any such described document exists, is privileged information between defendants and their attorney and is thus not discoverable pursuant to L.S.A., C.C.P. Art. 1422.
II. The described document, if any such described document exists [sic] constitutes a writing that reflects mental impressions, conclusions, opinions or theories of Fred Juneau's attorney, and thus not discoverable under L.S.A., C.C.P. Art. 1424.
III. The described document, if any such document exists, does not constitute or contain evidence relevant to any of the issues in this suit, nor is the producing of the described document, if any such document exists, reasonably calculated to lead to the discovery of any evidence relevant to this suit."
The trial court issued a temporary protective order pending a hearing on whether the subpoena duces tecum should be quashed. By judgment signed August 28, 1984, the protective order was made permanent, quashing plaintiff's subpoena duces tecum.
On appeal, plaintiff argues that the requested document was not protected by the attorney-client privilege. In support of this position, plaintiff argues that, since the document was prepared by Riddle prior to plaintiff's termination and the institution of this suit, it was not done "in anticipation of litigation or in preparation for trial" as set forth in La.C.C.P. Art. 1424. Plaintiff also asserts that no attorney-client relationship existed between Riddle and Fred Juneau, president of the Police Jury, since the law mandates that the district attorney is the legal advisor for the Police Jury. La.R.S. 16:2 and La.R.S. 42:263.[5] Finally, plaintiff argues that the document prepared by Riddle for Fred Juneau could not be considered privileged because Fred Juneau made several copies of such document and randomly disseminated them to other members of the Police Jury.
*1031 Louisiana Code of Civil Procedure Article 1424 provides in pertinent part:
"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert." (Emphasis ours).
The Louisiana Supreme Court discussed the above underlined mandate in Article 1424 in Hodges v. Southern Farm Bureau Casualty Ins. Co., 433 So.2d 125 (La.1983) as follows:
"This so-called `opinion work product' rule is derived from Federal Rule 26(b)(3).11 The rule is `distinct from and broader than the attorney-client privilege.' United States v. Nobles, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); In re Murphy, 560 F.2d 326 (8th Cir.1977). Whereas the attorney-client privilege protects only confidential communications, the opinion work product doctrine may encompass any writing prepared in anticipation of litigation by the attorney. In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir. 1980); Diversified Industries v. Meredith, 572 F.2d 596 (8th Cir.1977). The purpose of the work product doctrine is not merely to assist the client in obtaining complete legal advice, but also to afford the attorney a `zone of privacy' within which he is free to evaluate and prepare his case without adversarial scrutiny.12 In re Grand Jury Subpoena Dated Nov. 8, 1979, 622 F.2d 933 (6th Cir.1980); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C. Cir.1980); In re Grand Jury Proceedings, 604 F.2d 798 (3rd Cir.1979); In re Murphy, 560 F.2d 326 (8th Cir.1977); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138 (D.Del.1982); Hercules v. Exxon Corp., 434 F.Supp. 136 (D.Del. 1977)." (Footnotes omitted).
In the instant case, the requested document was prepared by Riddle at the request of Fred Juneau. Fred Juneau testified, by deposition, that one day in early March of 1984 he was consulting Riddle on various other legal matters and that he raised the question of the expiration date of Sherwin Juneau's position as Secretary-Treasurer of the Police Jury. Riddle researched the issue and presented a written opinion to Fred Juneau as to his findings on the matter. Subsequent to this, Sherwin Juneau was terminated from his employment with the Police Jury and instituted the instant suit.
Our initial inquiry is whether the document prepared by Riddle for Fred Juneau was done "in anticipation of litigation". Appellant argues that, since it was prepared prior to his termination and the institution of this suit, that it was not prepared "in anticipation of litigation". Although it is true that the document was prepared at a time when there was no actual litigation in progress, this does not mean that it was not prepared with some degree of anticipation of litigation. It is not the date or time of the document which controls whether it was prepared in anticipation of litigation, but rather the content, nature, and purpose thereof. Sonier v. Louisiana Power & Light Co., 272 So.2d 32 (La.App. 1st Cir.1973); Cargill, Inc. v. Cementation Co. of America, Inc., 377 So.2d 1334 (La.App. 1st Cir.1979), reversed on other grounds, 379 So.2d 254 (La.1979).
In the instant case, Fred Juneau was apparently concerned with the Police Jury's legal right to terminate Sherwin Juneau, as he sought the advice of his long-time attorney, Riddle. As a result of Sherwin Juneau's termination, this suit was instituted against the Police Jury and eight individual members thereof, including Fred *1032 Juneau. Riddle undertook the legal representation of the eight individual defendants as the Police Jury was represented by the District Attorney. In light of the subsequent turn of events, we feel that the document in question was in fact prompted by Fred Juneau's anticipation of litigation. Certainly Fred Juneau would not have felt it necessary to consult an attorney had he not anticipated some legal action in response to plaintiff's termination.
We also note that the document itself was a cumulation of the "mental impressions, conclusions, opinions or theories" of attorney Riddle, and as such is clearly not subject to production or inspection under any circumstances. The prohibition contained in La. C.C.P. Art. 1424 is absolute. Barnett v. Barnett Enterprises, Inc., 182 So.2d 728 (La.App. 4th Cir.1966); State, Department of Transportation & Development v. Stumpf 458 So.2d 448 (La. 1984); Katz v. Allied Van Lines, 431 So.2d 1099 (La.App. 4th Cir.1983).
We find no merit in plaintiff's contention that because Fred Juneau distributed the document in question to other members of the Police Jury it lost its status as privileged. Plaintiff cites and we have found no authority for this proposition. As stated above, there is an absolute prohibition against the discovery of writings which reflect the mental impressions, conclusions, opinions or theories of an attorney or expert. La. C.C.P. Art. 1424.
We therefore find no error in the trial court's grant of a protective order quashing plaintiff's subpoena duces tecum. We find this assignment of error to be without merit.

PLAINTIFF'S REINSTATEMENT
The final and most significant argument on appeal is that the trial court erred in holding that the issue of plaintiff's reinstatement and/or payment of salary pending a valid termination was moot.
In his written reasons for judgment, the trial judge reasoned as follows:
"The only question considered at this summary hearing on August 15, 1984 was whether or not the plaintiff, Sherwin Juneau, should be reinstated by this Court in his job as Secretary-Treasurer of the Avoyelles Parish Police Jury. Even from the viewpoint most favorable to plaintiff Sherwin Juneau's term of office ended every two years in June of even-numbered years. The Police Jury in a duly convened regular meeting, by motion duly made, seconded and passed by majority vote, terminated the employment of Sherwin Juneau. The Avoyelles Parish Police Jury acted within its legal authority and power.
Sherwin Juneau was effectively and legitimately discharged by the Avoyelles Parish Police Jury on March 13, 1984. He is not now entitled to be reinstated by this Court as an employee of the Avoyelles Parish Police Jury. Also the latest possible date of any employment term, June 13, 1984, has passed. Thus, the question of reinstatement at this time is moot. Plaintiff's prayer for reinstatement is denied at his cost.
By overcoming the apparent provisions of La. R.S. 42:3 by interpretation or counter authority, perhaps Sherwin Juneau will be able to establish a claim for wages due from March 13, 1984 until June 13, 1984. This matter, along with any other possible items of damages due to plaintiff, can be litigated by ordinary process at the trial of the case on its merits."
Apparently, the trial judge initially determined that plaintiff was legitimately discharged by the Police Jury on March 13, 1984. He then added, apparently as an afterthought, that nonetheless, the issue of reinstatement was moot since the latest possible date of any employment with the Police Jury had already passed. Since we agree with the trial court that plaintiff was legally terminated by the Police Jury on March 13, 1984, we need not address the issue of mootness.
As set forth earlier, plaintiff was re-elected to the position of secretary-treasurer on June 14, 1983 for a two-year term, *1033 pursuant to La. R.S. 33:1651 which provided at that time:[6]
"The police jury shall elect a parish treasurer for a term of two years. The office of the parish treasurer shall be located at such site as may be designated by the local governing authority; however, the parish treasurer shall also maintain an office at the parish seat."
Plaintiff relies on the above statute as determinative of the issue of his entitlement to reinstatement. He claims that since the law provides for a two-year term of office for treasurers of police juries, that he was illegally terminated from his office after having served only nine months. However, contrary to plaintiff's assertions, there is other law bearing on the issue at hand.
The controversy in the instant case arises as a result of the 1977 amendment to La. R.S. 33:1226. La. R.S. 33:1226, as amended in 1977 by Act No. 117, § 1, provides in part:
"A. Police jurors elected in the state general election of 1983 and thereafter shall on the second Monday in January next succeeding their election meet at the courthouse of their respective parishes, take the oath of office, organize and proceed to the discharge of their duties, and the police jury shall elect a president from their own number."
By virtue of the above act, the police jury which elected plaintiff as Secretary-Treasurer in June of 1983 served only a 3½ year term of office, ending in January, 1984, as opposed to the usual four year term of office. The Avoyelles Parish Police Jury elected in the general election of 1983 took office on the second Monday in January, 1984. Thus, the Police Jury which elected plaintiff to the position of Secretary-Treasurer was replaced by a new Police Jury as of January, 1984.
La. R.S. 42:3 provides that:
"The term of office of all employees or officials elected by any state, district, parochial or municipal board shall not be for a longer period of time than the term of office of the membership of the board electing them so that each respective board shall elect its own officers and employees. This Section does not apply to the officers or employees of any board governed by a civil service law of this state or of any parish or municipality thereof."
Plaintiff argues that despite R.S. 42:3, his term of office should have extended until June, 1985, since R.S. 33:1651 provides treasurers with a two-year term of office. Plaintiff asserts that, since R.S. 33:1651 is specific legislation pertaining to the appointment of police jury treasurers, whereas R.S. 42:3 is merely general legislation pertaining to public employment, the former should prevail over the latter. We disagree with this interpretation.
The legislature is presumed to have enacted each statute with deliberate and full knowledge of all existing laws on the same subject. A particular statutory provision should be construed along with the remainder of the statute and in connection with all laws on the same subject matter. Cryer v. City of Alexandria, 425 So.2d 900 (La.App. 3rd Cir.1983); Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La. 1980), appeal after remand, 434 So.2d 123 (La.App. 5th Cir.1983), writ denied, 435 So.2d 444 (La.1983). Laws in pari materia, or upon the same subject matter, must be construed with reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another. State v. Freeman, 411 So.2d 1068 (La. 1982); Macon v. Costa, 437 So.2d 806 (La. 1983).
*1034 After considering the provisions of La. R.S. 33:1651 and La. R.S. 42:3 with the above rules in mind, we conclude that the statutes are not repugnant to each other. The provision in R.S. 33:1651 allowing for a two-year term of office for treasurers is logically limited by the mandate in R.S. 42:3, that no officer of a police jury shall serve for a term longer than the term of office of the police jury which elected him. R.S. 42:3 clearly points out the reasoning behind such mandate, i.e., so that each police jury be given the freedom and flexibility to appoint its own officers and employees. Were R.S. 33:1651 strictly interpreted, disregarding the intent of R.S. 42:3, police juries, or other municipal boards, could be forced to continue in office officials and employees elected by prior boards whose ideas and goals were diametrically opposed to their own. Such a situation would only create ineffective and stagnant governing bodies. This is precisely what the legislature intended to prevent through the enactment of R.S. 42:3.
We therefore find that the two-year term of office for treasurers of police juries as set forth in R.S. 33:1651 is restricted by the provisions of R.S. 42:3. Thus, a treasurer of a police jury is generally entitled to serve a two-year term so long as the police jury which elected him serves as long. Once the electing jury goes out of power, so necessarily does the treasurer. Therefore, in the instant case, when the new Police Jury took office on the first Monday in January, 1984, plaintiff's contract of employment with the Police Jury terminated. At this point in time, plaintiff no longer had a valid contract of employment with the Police Jury and could be terminated at the will of the incumbent Jury. The Police Jury's action on March 13, 1984 was therefore legal and justified according to R.S. 42:3. The Police Jury was entitled to and did elect a Treasurer of its own choosing. Plaintiff therefore was not entitled to reinstatement as Secretary-Treasurer of the Police Jury.
Since we agree with the trial court's determination that plaintiff was effectively and legitimately discharged on March 13, 1984, we need not discuss whether his assessment of the "mootness" of the situation was correct. The trial judge's comment regarding the mootness of the issue was simply superfluous.

DECREE
For the above and foregoing reasons, the judgment of the trial court dated April 27, 1984, dismissing plaintiff's suit against the eight individually named defendants on the exception of no cause of action is affirmed only insofar as it relates to defendants, Fred Juneau, Alvis Laprairie, Arthur Fuqua, Gaston Juneau, Jr., Jan Lemoine, Anthony Desselle and Lonnie Juneau. However, the matter is remanded to the trial court to allow plaintiff a reasonable period of time in which to amend his petition, if he can, so as to state a cause of action as to these defendants. The judgment of April 27, 1984 is reversed insofar as it dismisses plaintiff's claims against Matt Bordelon.
Additionally, the trial court's judgment of August 28, 1984, quashing plaintiff's subpoena duces tecum, is affirmed. The trial court's judgment of September 13, 1984, which denied plaintiff's claim for reinstatement, is also affirmed. Finally, this matter is remanded to the trial court for further proceedings consistent with the views expressed. Plaintiff-appellant is cast with all costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART; AND, REMANDED.
NOTES
[1] Although there were actually two separate appeals taken by plaintiff in this matter, both were docketed under the same number. We therefore will dispose of both appeals in this one opinion.
[2] The Police Jury and plaintiff, Sherwin Juneau, applied to this court for a supervisory writ regarding the trial court's ruling on the exceptions of no cause of action. Plaintiff's application for a writ was denied by us on May 24, 1984, our docket number 84-453. We denied the Police Jury's application for a writ on May 30, 1984, our docket number 84-445. The Police Jury thereafter applied to the Louisiana Supreme Court for a writ of certiorari, which was denied on June 25, 1984, docket number 84-CC-1114, 452 So.2d 692.
[3] Plaintiff again sought a supervisory writ from this court with regard to the protective order and contempt charges. We denied plaintiff's application on June 26, 1984, our docket number 84-602. Plaintiff thereafter applied for a writ of certiorari to the Louisiana Supreme Court. The Supreme Court, on July 5, 1984, granted the writ in part dismissing the contempt proceedings against plaintiff's attorneys. In other respects, the writ was denied. (La. Supreme Court docket number 84-CC-1273).
[4] We need not categorically determine whether as Secretary-Treasurer of the Avoyelles Parish Police Jury, plaintiff is a public official. To afford a public official relief from defamatory remarks, plaintiff must allege that such remarks were made with actual malice on the part of defendants. Cherry v. Hall, 270 So.2d 626 (La. App.2d Cir.1972). In the instant case, plaintiff met the requirement of alleging malice on the part of defendants in paragraph (3) of his petition.
[5] La.R.S. 16:2 provides in pertinent part:

"A. The district attorneys of the several judicial districts of Louisiana, other than the parish of Orleans, shall ex officio be the regular attorneys and counsel for the police juries, parish school boards, and city school boards within their respective districts and of every state board or commission domiciled therein, including levee boards, hospital and asylum boards, education boards, and all state boards or commissions the members of which, in whole or in part, are elected by the people or appointed by the governor or other prescribed authority, except state boards and commissions domiciled at the city of Baton Rouge, parish of East Baton Rouge, and all boards in charge or in control of state institutions."
La.R.S. 42:263 provides in pertinent part:
"A. No parish governing authority, levee board except as provided in Subsection B hereof, parish school board, city school board, or other local or state board shall retain or employ any special attorney or counsel to represent it in any special matter or pay any compensation for any legal services whatever unless a real necessity exists, made to appear by a resolution thereof stating fully the reasons for the action and the compensation to be paid. The resolution then shall be subject to the approval of the attorney general and, if approved by him, shall be spread upon the minutes of the body and published in the official journal of the parish."
[6] La.R.S. 33:1651 was amended by Acts 1984, No. 260, § 1 to provide as follows:

"The policy jury shall elect a parish treasurer for a term of two years. The office of the parish treasurer shall be located at such site as may be designated by the local governing authority; however, the parish treasurer shall also maintain an office at the parish seat. The parish treasurer may be removed from office for misfeasance, malfeasance, or any other lawful cause by vote of the majority of the elected members of the parish governing authority."